# Commonwealth *versus* Gloucester Ferry Company.

1. The capital stock of a foreign corporation doing business within this Commonwealth is, by virtue of the Acts of May 1st 1868 (Pamph. L. 108) and June 7th 1879 (Pamph. L. 112), liable to taxation.

2. A ferry company incorporated by the state of New Jersey to operate ferry-boats plying to and fro across the river Delaware, between the New Jersey and Pennsylvania shores, which company holds its corporate meet-

[Commonwealth *v.* Gloucester Ferry Co.]

ings in New Jersey, owns real estate in said state, has its boats registered there, and owns no property in Pennsylvania save the lease of a slip or wharf at which its boats touch, but only for a sufficient time to permit the reception and disembarking of passengers and freight, is a foreign corporation doing business in this state, within the meaning of said acts, and its capital stock is therefore liable to taxation.

GREEN, J., dissents.

· May 20th 1881.　Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Dauphin County :* Of May Term 1881, No. 162.

This was an appeal by the Gloucester Ferry Company, from an account stated by the auditor-general and state treasurer, against said company, for taxes on its capital stock, based upon the appraised value thereof for the years from 1865 to 1879 inclusive, finding the amount of $2,593.96 to be due to the Commonwealth, with interest thereon from July 7th 1880. The tax was claimed under the provisions of the 4th section of the revenue act of June 7th 1879 (Pamph. L. 112).

The following case stated was submitted to the court by the agreement of the parties :—

The " Gloucester Ferry Company" was duly incorporated by act of the General Assembly of the state of New Jersey, approved 9th March 1865 (Prout charter), with a capital stock of $50,000, divided into shares of $50 each, to erect a steamboat ferry from some point in the town of Gloucester, in the township of Union, in the county of Camden, state of New Jersey, to such place or places in the city of Philadelphia as should best secure the public convenience and interest of said corporation, and for that purpose, with power to purchase or lease real estate, erect wharves, piers, slips, buildings, and all other necessary appendages, and to build steam-boats, vessels and ferry-boats, and with further power to make contracts with other corporations and with individuals for transporting or carrying any kind of goods, merchandise, freight, or passengers.

By the said charter it is provided that the president and directors might, from time to time, make such dividends of the net profits of their business as they might deem prudent. Stockholders' meetings were directed to be held in the said county of Camden, and notice of the said meetings is directed to be published in one or more newspapers printed in the county of Camden. The company has never had any charter from the state of Pennsylvania.

Since the year 1865 the said corporation has maintained a

[Commonwealth v. Gloucester Ferry Co.]

ferry between said town of Gloucester and city of Philadelphia, across the river Delaware, leasing or owning steam ferry-boats for such purposes. At each of said places, it has rented, until recently, a slip or dock. Within a year it has purchased the real estate in the county of Camden needed for its purposes. It still continues to lease that used by it in the city of Philadelphia.

It has never transacted any other business saving that of ferrying passengers and freight across said river between said town and city.

It has never owned any real or personal property located in the city of Philadelphia.

Its property consists exclusively of real estate as aforesaid in the county of Camden, certain steamboats, engaged in said ferriage, and a lease of a wharf, slip or dock in the city of Philadelphia. It has never consisted of anything additional. The boats now owned by it are registered at the said port of Camden, and it has never owned any boats registered in any port of the state of Pennsylvania. No boats used by it have ever been allowed to remain in any portion of the last-named state saving so long as has been necessary to receive and load passengers and freight thus ferried, or to be ferried.

The auditor-general and state treasurer stated an account against said company, on the 7th July 1880, of taxes on its capital stock, based upon the appraised value thereof, for the years from 1865 to 1879, both inclusive, finding the amount of $2,593.96 to be due to the Commonwealth.

The present case is an appeal, duly entered from said account stated.

If the court be of the opinion, under the within statement of facts, that the company is liable to the Commonwealth for a tax upon its capital, then judgment shall be entered in favor of the Commonwealth against said company for the amount of said statement, viz.: $2,593.96, with interest, costs, and commission of attorney-general from 7th July 1880; but, if it be of the opinion that the said company is not liable to pay a tax on said capital stock, then judgment is to be entered in favor of the said company.

Either party is to be allowed an appeal or writ of error.

The court, after argument, entered judgment on the case stated, in favor of the Gloucester Ferry Company, PEARSON, P. J., filing the following opinion:—

This case came into court by appeal from the decision of the auditor-general and state treasurer, who had charged the defendant with a state tax, with the interest thereon, commencing on the 9th day of March 1865, and ending on the

termination of the year 1879, amounting to $2,593.96. The defendant denies owing anything.

A case has been stated for the opinion of the court, which presents substantially the following state of facts: On the 9th of March, 1865, the defendant was incorporated as a company to ferry freight and passengers across the Delaware river, from the town of Gloucester, in the state of New Jersey, to the city of Philadelphia, in the state of Pennsylvania, with a capital of $50,000, divided into shares of $50 each. All of the stock was held, and the stockholders resided, in the state of New Jersey. The steam ferry-boats were all registered there under the laws of the United States; lay there at all times except when engaged in navigation; the company had its wharf there, as also its business office, and there its officers and men resided. It had no other connection with Pennsylvania except a wharf or slip rented in the city, where it landed and received its freight and passengers.

The ferry and its company was never in any manner recognized by the laws of Pennsylvania, nor by its state officers, until the year 1880, when it was for the first time taxed. Have we any law imposing a tax on this company? If so, for how much?

It is conceded by the attorney-general on the argument that there was none prior to that on the 1st day of May 1868, the 4th section of which, it is contended, enabled the officers to impose a tax under these words: "That the capital stock of all companies whatever, incorporated by or under any law of this Commonwealth, or incorporated by any other state and lawfully doing business in this Commonwealth, shall be subject to pay a tax into the treasury of the Commonwealth annually, at the rate of one half mill for each one per cent. of dividend made or declared by such company; and in case of no dividend being made or declared by such company, then three mills upon a valuation of the capital stock of the same, made in accordance with the 2d section of this act." That valuation was to be made under oath by the officers of the company, and if the state officers were dissatisfied with the valuation, then to be made by themselves. Was this New Jersey corporation doing business in this state according to the meaning and intention of that statute? Was it subject to a taxation on the whole value of its capital stock as imposed? If not on the whole, on what part? Was the defendant exempt from taxation on the ground of trade and commerce between the states?

It may be conceded that this New Jersey corporation was doing some business in this state. Its boats stopped at a wharf or slip daily, in landing its freight and passengers. For the

most part passengers stopped on and off at that point. The company had no office and owned no land. Did the legislature intend by such a transaction of business that this company should be taxed on its whole capital stock, or even on the half of it? For, if it can be taxed on the half, it can on the whole. If the Northwestern Railroad, with a capital of forty millions, incorporated under the laws of Illinois or Wisconsin, should occasionally land a car-load of grain in Pennsylvania, our officers could lawfully tax it at the rate of three mills on its whole capital stock, although there was not a dollar of its stock held in this state, nor any of its stockholders residing here, or any office or warehouse opened within our borders. With quite as much plausibility could the whole stock of the Erie Railway be taxed in Pennsylvania, because that road passed through twenty-six miles of our territory, or the whole stock of the Lake Shore and New York Central, including the Lake Shore road from the city of New York to Chicago, be taxed because the road ran through the triangle. Such a system of taxation was never practiced in Pennsylvania. We tax in proportion to the capital employed or ground used in our state, not in proportion to the whole capital stock. Some appraisement is always made, and regard had to the use made of the occupancy. But it is urged that one-half of the river ferried over belongs to Pennsylvania. The river is one of the great highways of nature, and no state has a right to the water. Any state, or the nation at large, has an equal right of navigation. No one can claim an exclusive right. Vessels from Maryland or Virginia have an equal right to sail on its waters with Pennsylvania or Jersey, even to the margin of low water. We are referred by the attorney-general to the case of the Trenton, Delaware, Bridge Company, reported in 9 Am. Law Register, (O. S.) 298, to show that this company can be taxed to the value of one-half of its capital. We are unable to see the slightest analogy between the cases. That company was incorporated by both states; the bridge was authorized by both; it was a permanent and solid structure, erected equally over the soil of each, and although the most of the stock may have been held in New Jersey, that was unimportant. The structure was on the territory of each, and this state would have the same right to tax that part within her borders that she would a tract of land improved by New Jersey capital. The mere right of navigation over public waters is different from building permanent structures by authority of our laws. New Jersey neither asked nor was required to ask for leave to navigate the river, nor had it any necessity to ask for leave to land its

[Commonwealth *v.* Gloucester Ferry Co.]

passengers. It had that right by the comity of nations and the navigation laws, and our state could not prohibit it.

In a case where the state undertakes to tax, it must show jurisdiction over the person or the property. Here it has none over either. How can it tax the stock? It has no jurisdiction over it, as it is nowise held in this state. The legislature might impose a tax on wharfs, ships, &c., but it probably never has, and if it might so do, or has so done, this tax has not been so imposed. It would be by valuation, or by the trip, and it is held that it may charge for the use of wharfs, &c., a reasonable sum, but not by the tonnage of the vessel: 20 Wallace 577, 582. And ships may be taxed to the owner, like other property, at his residence: 9 Otto, 283–4. These vessels are all registered at their port in New Jersey, where the owners and masters reside, and it is clearly settled that they cannot be taxed by reason of going into, landing or trading in any other port in the United States; therefore where a vessel was registered in New York it could not be taxed for trading in Mobile, or any of the ports of California or Oregon: Hays *v.* Steamship Company, 17 Howard 596; 23 New York 227. It would interfere with the commerce of the states if the vessel could be taxed at every port where it landed: 16 Wallace 475. The property is there for a temporary purpose, and does not become incorporated with that of the state: Idem. 476. And touching at a port, and trading there, did not render the vessel liable to be taxed there: Idem. 478–9. Congress has the power to regulate the commerce of the country, and the states cannot impose a tax on it otherwise or greater than that imposed by congress, nor can the effect be changed by changing the name, or taxing the occupation of the master. Per GRIER, J., in the Passenger Cases, 7 Howard 458. The state cannot tax the landing of passengers: Idem. Our state can neither tax nor prohibit this New Jersey corporation from landing its passengers in this state, for if we can tax we can prohibit, as was declared by Chief Justice MARSHALL in several of the early cases, and the principle is fully recognized in Crandall *v.* State of Nevada, 6 Wallace 35. The state cannot change the effect by taxing the bill of lading instead of the registered vessel, or its freight: Almy *v.* State of California, 24 Howard, 169. All taxation must relate and be limited to persons, property or business within the state, all must apply to one or the other: 15 Wallace 300. In the present case our state cannot lawfully impose this tax; it is not on the person or property, all of which is situated in New Jersey; nor can it on the business, for that is protected for the benefit of trade, there being none other conducted than the landing and receiving of passengers. This is part of the com-

OF PENNSYLVANIA.

[Commonwealth v. Gloucester Ferry Co.]

merce of the country. The passengers are secured in going and coming by the federal constitution, nor can these principles be evaded by attempting to impose the tax on the stock of the company; it is a mere change of name and cannot change the effect. We are, therefore, clearly of opinion that the whole of this tax is illegal and assessed without authority, and even if our statute would bear the construction put on it by the state officers it would be in violation of the laws and Constitution of. the United States.

Here our opinion might end, but as there is a reviewing court we will notice some erroneous items. There is no law au·thorizing the assessments of 1865, '66 and '67, and we are not aware of any authorizing six mills on the stock for 1875, 1876 and 1877. When the officers came down to 1874, they appraised one-half of the stock at $32,000. The same for 1875–6–7 and 8, and for 1879 at $50,000. Nothing has been shown, or even suggested, to authorize these changes, but as this is a case stated, we may be going beyond our power in suggesting all of this doubling over.

The court gives judgment in favor of the defendant on the stated case.

The Commonwealth took this writ of error, and filed the following specifications of error.

The court erred in deciding as follows :—

1. "The ferry and its company was never in any manner recognized by the laws of Pennsylvania, nor by its State officers, until the year 1880, when it was for the first time taxed." ·

2. "The company had no office, and owned no land" (in this state).

3. "How can it" (the state) "tax the stock? It has no jurisdiction over it, as it is in nowise held in this state." ·

4. "Our state can neither tax nor prohibit this New Jersey corporation from landing its passengers in this state, for if we can tax we can prohibit, as was declared by Ch. J. MARSHALL in several of the early cases, and the principle is fully recognized in Crandall v. State of Nevada, 6 Wallace 35."

5. "In the present case our state cannot lawfully impose this tax, it is not on the person, or property, all of which is situated in New Jersey, nor can it on its business, for that is protected for the benefit of trade, there being none other conducted than the landing and receiving of passengers. This is part of the commerce of the country. The passengers are secured in going and coming by the federal Constitution, nor can these principles be evaded by attempting to impose the tax on the stock of the company, it is a mere change of name and cannot change the effect. We are therefore clearly of opinion that

the whole of this tax is illegal and assessed without authority, and even if our statute would bear the construction put on it by the state officers, it would be in violation of the laws and Constitution of the United States."

6. " The court gives judgment in favor of the defendant on the stated case."

*Henry W. Palmer*, Attorney-General (*Lyman D. Gilbert*, Deputy Attorney-General, with him), for the Commonwealth.—This is a tax upon the capital stock of a corporation. It is not a tax upon the specific property of a corporation in which its capital may be invested. It is not an attempt to tax the ferry-boats of this company, nor is it an effort to tax a corporation in proportion to the number of ferry-boats it owns. The tax is not imposed either directly or indirectly upon them; it is not measured in amount by their numbers; it is the same whether the company owns few or many of them, and is unaffected by the frequency of their use. It therefore clashes with none of the following decisions which form part of the judicial argument against its validity : Cannon *v.* New Orleans, 20 Wallace 577, 582 ; Transportation Co. *v.* Wheeling, 9 Otto 273, 283, 284 ; Morgan *v.* Parham, 16 Wallace 471, 475, 476, 477 ; Hays *v.* Steamship Co., 17 Howard 596 ; Hoyt *v.* Commissioners, 23 N. Y. 227. It is not a tax " on account of every passenger brought from a foreign country into the state ;" it is not measured by the number of passengers or in any way affected by them, and therefore does not contravene the doctrine of The Passenger Cases, 7 Howard 283 : It is not a tax imposed upon " every bill of lading given " from within to points without the state, and is therefore not affected by the decision of Almy *v.* California, 24 Howard 169. It is not a tax on this company " for every passenger carried out of the state " by it, and therefore does not come within the ruling of Crandall *v.* Nevada, 6 Wallace 35.

These decisions have no application to the tax upon capital stock. This character of tax is one of the oldest forms of corporate taxation. It is found in all our laws which raise revenue from corporations; and is expressly authorized in the 4th section of the Act of Assembly of 7th June 1879, which is a copy of earlier acts.

This section, by its express terms, taxes the capital stock not merely of corporations of domestic creation, but of all those " incorporated by any other state . . . and doing business in this Commonwealth."

That this company does business within this Commonwealth in the sense intended by the act appears from the following

reasons: The bed and channel of the Delaware river *ad medium aquæ filium* belong respectively to the states of New Jersey and Pennsylvania: Bennett v. Boggs, 1 Baldw. 72. The Delaware being a navigable coterminous stream between New Jersey and Pennsylvania, the title of each to the bed extended from their respective shores to the middle of the river, according to the well-established principle of universal law: Vattel § 266. It follows therefore as a geographical fact that as each ferriage of persons and property is made across the entire stream, this company is "doing business in this Commonwealth" and is within the class of corporations intended to be taxed by our laws.

But it is not merely within our taxing intention, it is plainly within our taxing power. It is a foreign corporation, and it is sufficient to say that never, since the decision of Augusta v. Earle, 13 Peters 519, has the power been denied to a state to exclude such a corporation from its limits, or to prescribe at pleasure the conditions of its entrance. The section referred to declared that the consideration upon which it can transact business within our borders is the payment of certain taxes, and as long as it continues its business it must comply with this condition.

This is not a tax upon the shares of stock in the hands of individual holders, but upon the capital stock of the corporation itself. There is a wide difference between these kinds of taxation: McKeen v. Northampton County, 13 Wright 519; Lycoming County v. Gamble, 11 Wright 106.

The capital stock of a corporation is not merely different from the shares of stock into which it is divided, but it is also different from the property in which it is invested. When a foreign corporation enters this Commonwealth under statutory permission, it comes not merely as an entity, with a power to sue, and to have the ordinary corporate privileges, but as a legal being with right to exist for certain purposes, and it brings with it the things which are necessary for those purposes, and among them its capital stock. This corporation, therefore, comes into our jurisdiction with its capital stock, for that is part of its organic faculty, and when it is here, its property is here with it.

Jurisdiction of the Gloucester Ferry Company is jurisdiction of its capital stock, for it does not slough that at the state line. When it does business within our limits, it transacts it here with the same powers and attributes it possesses in New Jersey. To deny this proposition is to assert that a foreign corporation for profit, with a capital stock, may transact business in this state without any capital stock whatever.

The court below laid stress upon the fact that the Gloucester Ferry Company is engaged in *commerce*, and it argued therefore

that it ought not to be taxed, because that would be taxing commerce itself, contrary to the inhibition of the federal Constitution. We concede the fact that its business is to transport persons and property, but we deny the judicial inference from these corporate transactions. The rule thus laid down would prevent us from taxing any inter-state railroad, and that we have this right clearly appears from the following decisions : State Tax on Gross Receipts, 15 Wallace 284 ; Erie Railway Co. *v.* Pennsylvania, 21 Wallace 492 ; Delaware Railroad Tax, 18 Wallace 206 ; Railroad *v.* Commonwealth, 16 P. F. Smith 73. The tax now in dispute is not laid upon the passengers or cargo, or upon their right to be transported, but is upon the company itself, and· has therefore the sanction of the federal courts for its collection.

The position we contend for merely asks that when a corporation comes within the state for purposes of business, it comes here as a subject of taxation. The contrary doctrine would allow a foreign corporation to transport people and freight over our territory by means of wagons, or by any device which does not require a permanent attachment to the soil, with entire free· dom from liability to taxation.

*John G. Johnson,* for the defendant in error.—1. The Gloucester Ferry Company did not " do business in this Commonwealth," whilst it merely navigated one of the navigable rivers of the United States, although the title to the soil of one-half of the bed of said river was in this Commonwealth. In stopping at the boundary line of the state, and there landing its passengers, it did not engage in any business " in " the same. In St. Louis *v.* Ferry Company, 11 Wallace 430, it was held : " The ferry boats of a corporation incorporated in one state, and carrying passengers forward and back across a river to a city situated in another state, are not taxable under a law taxing boats '*within* the city,' in a case where the relation of the boats to the city was simply that of contact, as one of. the termini of their voyage."

2. The said company is not within the taxing *intent* of the Act of 1879. The object was to tax capital employed here by foreign corporations doing business within the state. The legislature had a right to deny altogether, or to grant conditionally to such corporations, the privilege of doing such business. The latter alternative was adopted. The idea, however, was to tax only the capital employed in the business permitted to be carried on, as is apparent where the employment of ·capital "in the name of any other company," &c., is struck at. The tax is regulated by the valuation of the capital.

3. It is not within the *power* of the legislature of this commonwealth to tax the defendant in error under the circumstances set forth in the case stated. The right to tax must rest upon protection of persons or property. In this case, no such protection has been afforded. This state has no legal right to stop such ferriage. The right of navigating the navigable rivers of the United States belongs to all its citizens. Whilst a state may refuse to permit a foreign corporation to do business within its borders, when it can only be done through its comity, it is powerless to prevent the citizens of any other state (and corporations may be such) from doing what is lawful for them to do by reason of their citizenship. As was said in Crandall *v.* Nevada, 6 Wall. 35, " a tax imposed by a state for entering its territory or harbors, is inconsistent with the rights which belong to citizens of other states as members of the Union." The citizens of New Jersey have a right to be transported to Pennsylvania across the river Delaware, and it is not competent for the legislature of the latter state to prevent them, by forbidding the masters of the vessels conveying them to land, or by imposing a prohibitory tax as a condition precedent.

The cases cited in which the Supreme Court of the United States sustained taxes upon the capital stock of railroad companies, imposed by the states which had incorporated them, or permitted them to lay their tracks, are not in point. The right to construct a railroad must be obtained from the state in which it is to be located, and which may prescribe conditions. Besides this, in all of said cases, the tax was, in substance, upon the capital actually employed within the taxing state. In Hays *v.* S. S. Co., *supra,* and in other similar cases, it was held that it was not competent for any state, under a law taxing all property within its limits, to impose a tax upon ships stopping there in the course of trade. In several, if not all, of those cases, the ships belonged to a corporation. If any state possesses a power to prevent the landing of vessels, why may it not compel, as a condition of such landing, the duty of paying a tax upon the vessel so landing? If it is illegal to do this, can it be less so to tax the whole capital of the corporation as a condition of such right?

Mr. Justice GORDON delivered the opinion of the court, October 17th 1881.

In this case a single question is presented for our consideration. Did the defendant do business within the state of Pennsylvania during the period for which the tax in controversy was imposed? If it did, then it came within the provisions of the acts of May 1st 1868 and June 7th 1879, and was subject to the tax therein prescribed.

In the discussion of this case, it must not be forgotten that a corporation has no natural rights ; that it is but a legal entity, an artificial person, and that its rights spring either from legislative enactment or from comity.    Within the state of its creation it has no powers but those conferred upon it by the legislative act which called it into being, and whether it shall or shall not perform any of its functions in a foreign state depends wholly upon the will of such state, expressed either by statute or implied under that general law known as international comity :    Bank of Augusta *v.* Earle, 13 Peters 519.

From this view of the case, it becomes obvious, that the legislature may not only tax foreign corporations doing business in this state, but, if it so chooses, as was done by our Act of March 1810, in regard to foreign insurance companies, altogether prohibit the transaction of such business.    It follows, that there has been a good deal of learning wasted in this case in the endeavor to assimilate the rights of this corporation to those of individual citizens, when, in fact, they are entirely dissimilar, and based on principles totally different.

Returning, then, to the only question in this case, the inquiry is, did this ferry company do business in the state of Pennsylvania?    But this question may be readily solved by the answer which must necessarily be given to another question ; that is, where were its principal, or, for that matter, only points, of operation ?    The answer is, at Gloucester and Philadelphia.    Its whole income was derived from the transportation of freight and passengers from its wharf at Gloucester to its wharf at Philadelphia, and from its wharf in Philadelphia to its wharf in Gloucester.    At each of these points it had a place, that is, a wharf, where its main business, namely, its receipt of freight and passengers, was transacted, and, for that business, it was just as much dependent upon the one place as upon the other. Again, a wharf, or landing-place, was necessary at each end of its route ; the one it occupied at Gloucester was owned in fee, and the one in Philadelphia it held under a lease, but as it could hold by purchase, in New Jersey, only by virtue of the power derived from the statutory will of the legislature of that state, so it could hold by lease in Philadelphia only by the implied consent of the legislature of this Commonwealth.    It thus appears that the defendant was dependent, equally, not only for its business, but its power to do that business, upon both. states, and might, therefore, be taxed by both.

We may here state that, with the court below, we cannot understand by what authority the assessments for the years 1865, '66 and '67 were made ; nevertheless, as the case stated provides for no modification, in this respect, of the action of the taxing

officers or of the judgment which may be entered against the defendant, we do not feel ourselves justified in making such an attempt, and this the more so since we have been furnished with no data by which a modification or correction can be made.

The judgment of the court below is now reversed, and it is ordered that judgment on the case stated be entered for the Commonwealth, and against the defendant, in the sum of $2,593.96, with interest from July 7th 1880, attorney-general's commissions, and costs.

Mr. Justice GREEN filed the following dissenting opinion.

In my judgment the fundamental question in this case is, whether the legislature of Pennsylvania possesses the lawful power to impose the particular form of taxation sought to be enforced. The subject-matter of the proposed taxation is capital stock of a foreign corporation. The corporation defendant is established and exists by the law of New Jersey. Its entire capital is there held by persons who reside in that state. Its place of business, its officers and all its property are within that jurisdiction. It has never received, or claimed, the benefit of any legislation of this Commonwealth. Have we the right in these circumstances to tax its capital stock? In the case of the State Tax on Foreign-held Bonds, 15 Wall. 300, it was held that "the power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state. These subjects are persons, property and business. Whatever form taxation may assume, whether as duties, imposts, excises or licenses, it must relate to one of these subjects. It is not possible to conceive of any other, though, as applied to them, the taxation may be exercised in a great variety of ways." Now in the present case the proposed tax is levied upon a form of property—capital stock. It is not a tax upon persons, natural or artificial. It is not, specifically, a tax upon business. By the case stated it is declared that it is a tax upon the capital stock of the corporation defendant, and it is agreed that if the court shall be of opinion that the defendant is not liable to pay a tax on its capital stock judgment shall be entered in its favor. In view of these considerations the question recurs, how can this tax be sustained? It is directly and specifically a tax upon capital stock which is neither in fact or law within the jurisdiction of the State of Pennsylvania. In the case of Maltby *v.* Reading & Columbia R. R. Co., 2 P. F. Smith on p. 146, this court said: "It is undoubtedly true that the legislature of Pennsylvania cannot impose a personal tax upon the citizen of another state, but the constant practice is to tax property within our jurisdiction which belongs to non-residents."

[Commonwealth *v.* Gloucester Ferry Co.]

.  .  .  "There must be jurisdiction over either the property or the person of the owner, else the power cannot be exercised; but where the property is within our jurisdiction and enjoys the protection of our state government it is justly taxable, and it is of no moment that the owner who is required to pay the tax resides elsewhere." See also St. Louis *v.* The Ferry Co. 11 Wall. on p. 430. It is clear to my mind that, viewed as a tax upon property which is not within the jurisdiction of this Commonwealth, the proposed tax is invalid.

But it is claimed that the corporation defendant does business within the Commonwealth, and therefore comes within the words of the 4th section of the Act of May 1st 1868, which imposes taxation upon the capital stock of all companies incorporated by the law of this Commonwealth, or of "any other state, and lawfully doing business in this Commonwealth." The conclusion is drawn that because the defendant does business within our limits the tax upon its capital stock is lawful for the reason that the statute authorizes it. It will be perceived that this conclusion is not legitimate unless, as to this particular case, the statute is a valid exercise of legislative power. Without that element the words of the statute, as to the present controversy, are merely nugatory, and hence we are at once and necessarily remitted to the inquiry, can the Legislature lawfully impose such a tax? It may be conceded that, as a general rule, if the particular business done is done by virtue, or, indeed, by permission, of legislative authority, the right to tax exists. For then, there is a subordination of the corporate action to the legislative will which carries with it the power of prescribing the terms upon which the corporate action shall be exercised. This would certainly apply to all cases in which the right to come within the territorial limits of the state, and construct buildings or works of any kind, and carry on business, is conferred upon foreign corporations. When such corporations accept such privileges, they of course become subject to the jurisdiction and supervision of the legislative authority from which those privileges are obtained. But this doctrine fails of application if the particular business done does not depend upon either the express or implied consent of the legislative authority of the territory where it is conducted. This leads us to consider the character of the business done by the corporation defendant. In the case stated this subject is thus described: "It (the defendant) has never transacted any other business saving that of ferrying passengers and freight across said river between said town and city." The points between which this carriage of freight and passengers transpires are the town of Gloucester, in the state of New Jersey, and the city of Philadelphia, in the

[Commonwealth *v.* Gloucester Ferry Co.]

State of Pennsylvania, and the space traversed is the water of the river Delaware, and the means employed are steam ferry-boats. The waters of the river Delaware, at the port of Philadelphia, constitute one of the highways of nature, and the commerce of all the states, indeed, of all the world, may traverse them without the necessity of obtaining the consent of the legislature of Pennsylvania. When the ferry-boats of the defendant touch the territory of Pennsylvania at their landing-place in Philadelphia, they are in contact with our soil, but they have not traversed any portion of it. The surface of the river being that of a public navigable stream, does not belong to the coterminous states in the sense of exclusive ownership, whatever may be the title to the bed underneath. In the case of St. Louis *v.* The Ferry Co., 11 Wall. 423, it was held that the ferry-boats of a corporation incorporated in one state and carrying passengers and freight forward and back across a river to a city situated in another state, are not taxable under a law taxing boats within the city, in a case where the relation of the boats to the city was simply that of contact, as one of the termini of the voyage. In this case the boats plied between East St. Louis, in the state of Illinois, where the Ferry Co. was incorporated, and the city of St. Louis, in the state of Missouri. On p. 431, in speaking of the relation of the boats to the city, the court say, "Their relation to the city was merely that of contact there, as one of the termini of their transit across the river in the prosecution of their business." This being so it is evident that in traversing the river the boats of the defendant are not to be regarded as in the use and occupancy of any part of the soil of the state. Is, then, the discharge and receipt of passengers and freight on and from the wharf at Philadelphia, such a transaction of business within our territory as subjects the parties engaged in it to state taxation for the exercise of the privilege? In other words, may a state impose taxation either directly or indirectly upon traffic between the states? I am clear that such a power does not exist, because it would be in direct contravention of at least two distinct provisions of the federal constitution. 1st. That which declares that "no state shall, without the consent of congress, lay any imposts or duties on imports or exports except what may be absolutely necessary for executing its inspection laws." 2d. That which declares that congress shall have power to regulate commerce with foreign nations and among the several states and with the Indian tribes.

It cannot be questioned that the transportation of freight and passengers, over navigable waters, in vessels, is commerce in its most essential features. In Brown *v.* State of Maryland

[Commonwealth *v.* Gloucester Ferry Co.]

(12 Wheat. 419), Ch. J. Marshall, in defining commerce, said, "Commerce is intercourse; one of its most ordinary ingredients is traffic." Again, in Gibbons *v.* Ogden (9 Wheat. 1), he said, "Commerce undoubtedly is traffic, but it is something more, it is intercourse. It describes the commercial intercourse between nations and parts of nations, in all its branches, and is regulated by prescribing rules for carrying on that intercourse." . . . "The power over commerce, including navigation, was one of the primary objects for which the people of America adopted their government, and must have been contemplated in forming it." . . . "The word used in the Constitution then, comprehends and has been always understood to comprehend, navigation within its meaning, and a power to regulate navigation is as expressly granted as if that term had been added to the word 'commerce.' . . . The subject to which the word is next applied is to commerce 'among the several states.' The word 'among,' means intermingled with—a thing which is among others, is intermingled with them—commerce among the states cannot stop at the external boundary line of each state, but may be introduced into the interior." These judicial definitions are sufficiently precise to establish that the word 'commerce," as used in the federal Constitution, imports and includes intercourse and traffic between the states of the Union over navigable waters, as well as between the states and foreign countries. It follows, as was held in the cases cited and in other cases, that the power to regulate inter-state commerce resides in the federal government and not in the states, and therefore the right to conduct this commerce or traffic does not depend upon the will of the states, but may be exercised altogether independently of them. Ch. J. Marshall further said, in the case last cited: "The power of congress, then, comprehends navigation, within the limits of every state in the Union, so far as that navigation may be in any manner connected with 'commerce with foreign nations, or among the several states or with the Indian tribes.' It may of consequence pass the jurisdictional line of New York and act upon the very waters to which the prohibition now under consideration applies." While it is undoubtedly true that commerce among the states is a subject of congressional regulation and control, it is also true that a great variety of legislation by the states may lawfully be applied to it. These are ordinarily called police regulations, and are known as inspection laws, quarantine laws, health laws and others of a similar character, and they are clearly defined by Agnew, J., in the opinion of this court in the case of Craig *v.* Kline (15 P. F. S. 399). But the power to impose taxation in any form upon inter-state commerce has been uniformly held by the Supreme

[Commonwealth v. Gloucester Ferry Co.]

Court of the United States, and by several of the state courts of last resort, to reside in congress alone. Accordingly, in whatever form the question has arisen, and with whatever degree of indirectness state taxation has been imposed upon either foreign or inter-state commerce, it has been always rejected by the supreme judicial authority of the land, as an incompetent exercise of legislative power by the states. In the case of McCulloch v. State of Maryland (4 Wheat. 316), it was held that the legislature of Maryland had no power to impose taxation upon the circulation of the Bank of the United States which had established a branch in that state. The following propositions, amongst others were ruled in that case.

The Bank of the United States has constitutionally a right to establish its branches or offices of discount and deposit within any state.

The state within which such branch may be established cannot, without violating the Constitution, tax that branch ; the state governments have no right to tax any of the constitutional means employed by the government of the Union to execute its constitutional powers.

The states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by congress to carry into effect the powers vested in the national government.

In the case of Brown v. State of Maryland (12 Wheat. 419) it was held that an act of a state legislature, requiring all importers of foreign goods by the bale or package, &c., and other persons selling the same by wholesale, bale or package, &c., to take out a license for which they shall pay $50, and in case of neglect or refusal to take out such license, subjecting them to certain forfeitures and penalties, is repugnant to that provision of the Constitution of the United States, which declares that, " no state shall, without the consent of congress, lay any impost or duty on imports or exports except what may be absolutely necessary for executing its inspection laws ;" and to that which declares that congress shall have power " to regulate commerce with foreign nations, among the several states, and with the Indian tribes." It will be perceived that the act in question, of the state of Maryland, simply required importers of foreign goods to take out and pay for a state license before selling their imported goods. But it was held that the license fee was, in practical effect, the equivalent of a duty on imports, and that it was also a restriction upon foreign commerce, and therefore came in conflict with both the constitutional prohibitions above stated. The Chief Justice reasoned thus : ".There is no difference, in effect, between a power to prohibit the sale of an arti-

[Commonwealth *v.* Gloucester Ferry Co.]

cle, and a power to prohibit its introduction into the country. The one would be a necessary consequence of the other. No goods would be imported if none could be sold. No object of any description can be accomplished by laying a duty on importation, which may not be accomplished with equal certainty by laying a duty on the thing imported, in the hands of the importer. It is obvious that the same power which imposes a light duty, can impose a very heavy one; one which amounts to a prohibition. Questions of power do not depend on the degree to which it may be exercised. If it may be exercised at all, it must be exercised at the will of those in whose hands it is placed." It seems to me that this reasoning is entirely applicable to the case at bar. If the business done by the defendant may be used as a means of imposing a tax not otherwise lawful, and yet this business is not subject to the taxing power of the state, then all inter-state commerce, and, indeed, foreign commerce also, becomes dependent upon the will of the states, and may be controlled and even prohibited by them, though in clear violation of the constitutional provisions. If Pennsylvania may impose a tax on the capital stock of a foreign navigation company, because one of its vessels touches at one of her ports, and there discharges and receives passengers and freight, then every other state at whose ports other vessels of the same company may transact the same kind of business, may impose the same tax. Or if the same vessel touches at different state ports on our coast, the entire capital stock of the company owning her may be taxed at each port, and thus the whole commerce conducted by such company may be destroyed. The case of Brown *v.* Maryland, above cited, proves that it is not at all necessary to show that such results have followed or will follow; it is enough to show that they are possible. In discussing the clause relating to the regulation of commerce, Ch. J. MARSHALL further says: "If the states may tax all persons and property found on their territory, what shall restrain them from taxing goods in their transit through the state from one port to another for the purpose of re-exportation." . . "Or from taxing the transportation of articles passing from the state itself to another state for the purpose of traffic?" Here is a direct denial of the right to do the very thing which is sought to be done in the present case; to wit, taxing the transportation of articles from state to state. It matters not that it is indirectly done. The result is precisely the same as if done directly. It cannot be that a state may tax the capital stock of a corporation *because* it does a certain kind of business, when the business itself is not within the power of state taxation. In the case of McCulloch *v.* Maryland, before quoted, the Chief Justice said: "That the power·

[Commonwealth *v.* Gloucester Ferry Co.]

to tax involves the power to destroy; that the power to destroy may defeat and render useless the power to create; that there is a plain repugnance in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is declared to be supreme over that which exerts the control, are propositions not to be denied."

In the case of Gibbons *v.* Ogden, 9 Wheat. 1, the following propositions were declared:

The power to regulate commerce extends to every species of commercial intercourse between the United States and foreign nations, and among the several states.

The power to regulate commerce is general, and has no limitations but such as are prescribed in the constitution itself.

The power to regulate commerce, so far as it extends, is exclusively vested in congress, and no part of it can be exercised by a state.

The power of regulating commerce extends to navigation carried on by vessels exclusively employed in transporting passengers.

Ch. J. MARSHALL, in the course of his opinion, says: "Vessels have always been employed, to a greater or less extent, in the transportation of passengers, and have never been supposed to be, on that account, withdrawn from the control or protection of congress."

In Cooley's Constitutional Limitations, p. 591, the writer says: "Congress is empowered to regulate commerce with foreign nations and among the several states: and wherever a river forms a highway upon which commerce is conducted with foreign nations, or between states, it must fall under the control of congress, under this power over commerce."

In the Passenger Cases, 7 Howard 283, it was held that a state law which requires the masters of vessels engaged in foreign commerce to pay a certain sum to a state officer, on account of every passenger brought from a foreign country into the state, or before landing any alien passenger in the state, is inoperative by reason of its conflict with the constitution and laws of the United States.

This was a much contested case, and there was a wide difference of opinion among the judges who decided it. Several of them, regarding the laws in question as police regulations and health laws, dissented, and held them to be within the power of the state, but the decision of the majority was the other way, and has received the assent of the bench and bar of the country to the present time.

McLEAN, J., in delivering the opinion of the majority, said:

" Commerce is defined to be an 'exchange of commodities.' But this definition does not convey the full meaning of the term. It includes ' navigation and intercourse.' That the transportation of passengers is a part of commerce is not now an open question." The decision of the cause. was put upon the ground that the transportation of passengers was a part of commerce, and therefore it was subject to federal control and regulation, and it was not competent for a state to impose taxation upon it in any form.

In the case of Hays *v.* Pacific Mail Steamship Co., 17 How. 596, it was held that an ocean steamer owned and registered in New York, and regularly plying between Panama and San Francisco and ports in Oregon, remaining in San Francisco no longer than is necessary to land and receive passengers and cargo, and in Benicia only for repairs and supplies, is not subject to taxation by the state of California.

One of the reasons for the decision is thus stated in the opinion of the court : " Now it is quite apparent that if the state of California possessed the authority to impose the tax in question, any other state in the Union, into the ports of which the vessels entered in the prosecution of their trade and business, might also impose a like tax."

In the case of Crandall *v.* State of Nevada, 6 Wall. 35, it was decided that a special tax on railroad and stage companies, for every passenger carried out of the state by them, is a tax on the passenger for the privilege of passing through the state by the ordinary modes of travel, and while it was not a tax on the business of the companies, and was not in conflict with the provision in the Constitution forbidding a state to lay a duty on exports, nor with the provision conferring on congress the power to regulate commerce, yet it was void under the federal Constitution as interfering with the rights, both of the United States, to have the attendance of citizens at all points where the functions of government are to be performed, and of the citizens themselves to enjoy the free right of transit by the ordinary means of travel through the several states.

It will be observed that in this case the tax was a local one, imposed upon local companies within the state jurisdiction and upon business done within the state. There was no express provision of the federal Constitution with which the legislation imposing the tax conflicted, nevertheless, it was held void because it was indirectly, though not directly, a tax on the privilege of free transit through the several states. MILLER, J., on p. 46, reasons thus : " But if the state can tax a railroad passenger one dollar, it can tax him one thousand dollars. If one state can do this, so can every other state. And thus one or

more states, covering the only practicable routes of travel from east to west, or from the north to the south, may totally prevent or seriously burden all transportation of passengers from one part of the country to the other."

On p. 49, Justice MILLER quotes and adopts the following portion of the dissenting opinion of Chief Justice TANEY, on a point not disputed in the Passenger Cases : " We are all citizens of the United States, and as members of the same community must have the right to pass and repass through every part of it, without interruption, as freely as in our own states. And a tax imposed by a state for entering its territories or harbors, is inconsistent with the rights which belong to citizens of other states as members of the Union, and with the objects which that Union was intended to attain. Such a power in the states could produce nothing but discord and mutual irritation, and they very clearly do not possess it."

In the case of the State Tax on Railway Gross Receipts, 15 Wall. 284, it was conceded throughout the opinion of the majority of the court that if the taxation there in question had been upon the transportation of freight from one state to another, it would have been invalid. STRONG, J., on p. 292, said : " We have recently decided in another case between the parties to the present suit, that freight transported from state to state is not subject to state taxation because thus transported. Such a burden we regard as an invasion of the domain of federal power, a regulation of inter-state commerce which congress only can make."

In the case of Cannon *v.* New Orleans, 20 Wall. 577, it was held that any duty, or tax, or burden, imposed under the authority of the states, which is in its essence a contribution claimed for the privilege of arriving and departing from a port of the United States, and which is assessed on a vessel according to its carrying capacity, is a tonnage tax within the meaning of the federal Constitution, and therefore void.

The ordinance in question in this case imposed " levee dues " on all steamboats moving or landing at the port of New Orleans, and measured the amount by the tonnage of the vessels. It was decided that although the levee dues were imposed as a compensation for the commercial facilities afforded by the city, and did not purport to be a duty on tonnage, yet the practical effect of their imposition was to create such a burden, and as the privilege of arriving and departing was the real basis of the claim for dues, the ordinance was declared void, as being contrary to the federal Constitution.

Thus we see that in whatever manner, or by whatever devices, the right to transport passengers or freight from one State

to another has been made the subject of state taxation of any kind or for any purpose, such taxation has been declared void as contrary to the federal Constitution. The validity of such taxation cannot depend upon the character of the person exercising the right of transportation in question. It has been repeatedly held that a corporation is a citizen of the state by whose law it is created. But whether the person exercising the right of transportation under consideration be natural or artificial, the applicability of the constitutional prohibition must be the same in either case.

It is equally immaterial that a wharf is leased in Philadelphia by the defendant, on which its business of discharging and receiving passengers and freight is conducted. The use of such a wharf is a mere incident to the business, and can in no sense suffice to remove the fundamental invalidity of the proposed taxation. That taxation is void because the state has no power to impose it upon any body, or in any circumstances, or for any cause.

I cannot assent to the position that the defendant becomes subject to a right of taxation by the legislature of Pennsylvania because it exercises its functions within our territory by implication under the law of international comity. Such implication might justify a taxation which could be lawfully imposed, but it cannot suffice to remove the taint of absolute invalidity. A right to tax cannot exist by mere implication when it could not be exercised by direct legislation. If our legislature should pass a law imposing directly a tax upon the transportation of passengers and freight between the states of New Jersey and Pennsylvania it would undoubtedly be void, as contrary to the federal Constitution. No such power exists in the states. But if a state cannot impose such taxation by express enactment, of course it cannot do so by any species of implication.

I am of opinion that the taxation sought to be imposed in the present case cannot be sustained, because, *First*. As a tax upon capital stock specifically it is invalid for want of jurisdiction.

*Second*. As a tax upon capital stock by reason of business done within the Commonwealth, the particular business done being the transportation of freight and passengers over public navigable waters from one state to another, is not within the power of state taxation, and hence our Act of 1868 is inapplicable to the case.

For these reasons I feel obliged to dissent from the opinion of the majority of the court, reversing the judgment of the court below.

[Commonwealth *v.* Erie Railway Co.]

A petition for a reargument was subsequently filed by the defendant in error, on the ground that the attention of the court had not been called to a contract entered into between the states of Pennsylvania and New Jersey, in 1771, whereby it was agreed that the river Delaware should be and remain a common highway, free to both contracting parties : Act of Penna. March 9th 1771, 1 Sm. L. 322 ; Act of New Jersey, December 22d 1771, Allinson's Laws 347.

October 31st 1881. PER CURIAM. Petition for rehearing refused.