In re Rule on Cornelius Smith to show cause why he should not be disbarred. Cornelius Smith's Appeal.

*Attorney at law—Disbarment—Jurisdiction—Jury trial.*

The court of common pleas has jurisdiction to disbar an attorney at law when he becomes unworthy, without calling upon a jury to pass upon his misconduct.

In proceedings to disbar an attorney the testimony showed that during the progress of certain litigation in which he was interested as counsel, he had repeatedly made charges against four judges who had been connected with the litigation, to the effect that they were guilty of misconduct and crimes which if proved would subject them to impeachment and removal from office. It was conclusively shown that the charges were unfounded. He subsequently wrote letters to a judge while a rule was pending and undecided, charging that the judge had made a decision in the case, which he had withdrawn in the attorney's absence, at the request of the opposing counsel. All three of the judges of the court found that the letters were written with a view to influence the decision, and that they were intended to reflect upon the judicial integrity of the court. The evidence showed that the offending attorney was just past middle life, and that prior to the litigation in question had been of reputable character and assiduous in the practice of his profession, and that he is dependent for his support upon his professional income. The lower court entered a decree of disbarment. *Held*, that the punishment was too heavy, and the decree should

be modified so as to permit him to be reinstated at the end of two years from the date of disbarment, if in the meantime nothing further should appear against his private and professional character.

Argued Oct. 5, 1896. Appeal, No. 454, Jan. T., 1896, by Cornelius Smith, from order of C. P. Lackawanna Co., May T., 1896, No. 18, making absolute a rule to disbar Cornelius Smith, an attorney at law. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Modified.

Rule to disbar an attorney. Before EDWARDS, J.

The rule was as follows:

LACKAWANNA COUNTY, SS:

It appearing that Cornelius Smith, Esq., a member of the bar of Lackawanna county, being the defendant in a certain action pending in the court of common pleas of said county, at the suit of I. H. Burns, to No. 781 September term, 1895, wherein a rule was pending before Hon. F. W. Gunster and Hon. H. M. Edwards, judges of this court, to strike off an appeal from an award of arbitrators taken by the said Cornelius Smith, wrote and sent the following letters:

"SCRANTON, Pa., Dec. 31, 1895.

" HON. F. W. GUNSTER:

" Dear Sir:—I confess I was puzzled when Your Honor told me you had not handed down the opinion in the rule to show cause why the appeal should not be stricken off. A respectable member of the bar informed me that on last Monday Your Honor handed down an opinion discharging the rule, and upon a statement being made by Mr. Burns and Mr. Kasson, Your Honor took back the opinion for further consideration. But as you say otherwise, I suppose I have been misinformed.

" Yours truly,

" C. SMITH."

"SCRANTON, Pa., March 13, 1896.

"HON. F. W. GUNSTER:

" Dear Sir:—Being your friend from the very first day of my introduction to you, it would seem that I might at least claim

fair treatment at your hands.   More than this I do not want,
nor have I ever from any man claimed more.   It being stated
to me that in open Court you announced your opinion in the
case of Burns v. Smith, et al., discharging the rule to show
cause why the appeal should not be stricken off, and at the
request of Mr. Kasson and Burns in my absence you took the
opinion back; upon further inquiry this statement was con-
firmed by other gentlemen who were then present in court.
Now, if you once had the case, and once decided it, it does not
seem to me to be either just or fair for you to turn the case over
to another Judge.

" Respectfully yours,

" C. SMITH."

And the statements in the said letters with regard to the
alleged disposition of the said rule by the said judges being
untrue, and the said Cornelius Smith having been so informed
by Judge GUNSTER, prior to the writing of the last of the said
letters, a rule is now entered upon the said Cornelius Smith to
show cause why he should not be removed from his office of
attorney of this court, and his name stricken from the rolls
thereof, on the ground:

1. That the said letters reflect upon the official honesty and
integrity of Hon. F. W. Gunster, one of the judges of this court.

2. That they tend to influence and prejudice the disposition
of the said rule pending in the hands of the said judges.

3. That the action of the said Cornelius Smith was in viola-
tion of his duty and oath as an attorney of this court, and in
contempt and derogation of the administration of justice therein,
and attempted interference therewith.

This rule to be entered and served with a copy of these charges
forthwith upon the said Cornelius Smith, with the requirement
that he make formal answer thereto on or before Monday, March
30 inst., at 2 o'clock, A. M., at which time the said rule is
made.returnable.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in making absolute the rule to disbar.

*A. H. McCollum*, with him *C. Smith*, for appellant.—The
court had no jurisdiction to pass upon this case without giving

the respondent a trial by jury; Steamboat Co. v. Foster, 5 Ga. 194; Greene v. Briggs, 1 Curt. 325; Bk. of Col. v. Okely, 4 Wheat. 235; McGinnis v. State, 9 Humph. 43; Murry v. Askew, 6 J. J. Marsh, 27; Lewis v. Garrett, 5 How. (Miss.) 434; Ervine's App., 16 Pa. 263; Norman v. Heist, 5 W. & Ser. 171; Wynchamer v. People, 13 N. Y. 392; Com. v. Davis, 11 Pick. 434; Com. v. Phillips, 16 Pick. 213; Com. v. Dean, 21 Pick. 334; Com. v. Blood, 4 Gray, 32; Grimes v. Grand Junc. Ca., 3 H. of L. Cas. 759; Ex parte Ramshay, 18 Q. B. 187, 2 Co. Inst. 50; Murray v. Hoboken Land Co., 18 How. 280; Taylor v. Porter, 4 Hill, 146; In re Dorsey, 7 Port. 405; 2 Kent's Com. 13 n.; 3 Story's Const. 661; Baggs Case, 11 Coke, 97; Rex v. Liverpool, 2 Burr. 731; Bonaker v. Evans, 16 Q. B. 162; 3 Bl. Com. secs. 273, 296; 4 Bl. Com., 20; Sayles v. Briggs, 4 Met. 423.

There must be legal notice of the charge, and the opportunity to make defense: Kendall v. U. S., 12 Pet. 623; Rex v. Univ. of Cambridge, 1 Str. 557; Rex v. Ipswich, 2 Salk. 435; Rex v. Cambridge, 2 Ld. Ry. 1348; Queen v. Justice of Cambridge, 7 A. & E. 489; Herrick v. Smith, 1 Gray, 50; Woodward v. Tremere, 6 Pick. 354; Chaffee v. Hayward, 20 How. 208; Bowerbank v. Bis. of Jamaica, 2 Mo. (P. C.) 470; Ewer v. Coffin, 1 Cush. 27; Brown v. Webber, 6 Cush. 564.

If in any essential particular the proceeding is irregular or defective, the conviction will not be by "due process of law," and the judgment will be a nullity: Queen v. Saddler's Co., 10 H. of L. Cas. 404; Queen v. Smith, 5 Q. B. 621; Willis v. Gipps, 5 Mo. (P. C.) 379; Wildes v. Russell, L. R. 1 C. P. 722; Rex v. Gaskin, 8 T. R. 209; Howard v. Gosset, 10 Q. B. 381; Ex parte Ramshay, 18 Q. B. 187; Ex parte Kinning, 4 C. B. 507; Gorham v. Luckett, 6 B. Mon. 146; Greene v. Briggs, 1 Curt. 325; Bis. Cr. Pr., sec. 1001; Broom Max. (3d London ed.) 10; Sheldon v. Newton, 3 Ohio, 498; Ex parte Heyfron, 7 How. (Miss.) 127; Dynes v. Hoover, 20 How. 82.

There is no fact alleged in the pleadings sufficient to constitute an offense, or cause of action: Briston v. Wright, 1 S. & R. 901; Amee v. Dowlee, 23 L. Rep. 476; State v. Silver, 17 Ohio, 237; State v. Raymond, 20 Iowa, 588; State v. Root, 67 N. W. Rep. 590; State v. Markuson, 64 N. W. Rep. 934; In re Baker, 56 Ill. 299; Fletcher v. Dangerfield, 20 Cal. 425; Ex

parte Smith, 28 Ind. 47 ; Ex parte Steinman, 95 Pa. 237 ; Ex parte Robinson, 19 Wall. 512.

The proceeding is void on its face, for the reason that it pretends to proceed against the respondent for contempt of court, which is strictly a criminal offense, and the proceeding is for unfitness to hold the office of attorney, which is strictly a civil action: Williamson's Case, 26 Pa. 19; Clark v. People, 4 Breese, 266 ; Stewart v. People, 3 Scam. (Ill.) 403 ; State v. Clark, 46 Iowa, 155 ; Mattler v. Schaffer, 53 Ind. 247 ; Ex parte Walls, 64 Ind. 467.

As a proceeding for a contempt of court, it is void on its face, in not alleging that the respondent misbehaved in the presence of the court, thereby obstructing the administration of justice : Stewart v. People, 3 Scam. (Ill.) 403 ; State v. Anderson, 40 Iowa, 207.

As a proceeding for contempt of court, when the respondent, by his answer and apology, disavowed any intention to commit a contempt of court, the court had no power to proceed further in the case: Ex parte Dodge, 2 Cal. 135; In re Wooley, 11 Bush, 110; Ex parte Briggs, 64 N. C. 202; Ex parte Moore, 63 N. C. 297; Com. v. Snowden, 1 Brewster, 318 ; Hummel's Case, 9 Watts, 416 ; Newton's Case, 1 Grant, 456 ; Anderson v. Oliver, 138 Pa. 156.

If it were admitted that the letters in question constitute a contempt of court (and it is clear that they do not) the penalty of disbarment could not be imposed on the respondent : Com. v. Newton, 1 Grant, 457; Dicken's Case, 67 Pa. 169; In re H-T. 2 Penny. 84; People v. Turner, 1 Cal. 150; Storey v. People, 79 Ill. 47 ; Dickson v. Dustin, 21 Mich. 565.

As a proceeding to disbar, it is void on its face, in not alleging official misconduct by the respondent, as an officer of the court, either as official misconduct attended .with fraud and corruption, or the conviction of an infamous crime, or a series of disgraceful acts, resulting in a general bad character for integrity : Act of April 14, 1834; In re Baker, 49 N. H. 198 ; Bryant's Case, 24 N. H. 154.

As a proceeding to disbar, it is void on its face, because the proceeding is not on complaint made on oath or affirmation. It is not in accordance with " due process of law: " Ex parte Bradley, 7 Va. 377 ; Rex v. Wilkes, 4 Burr. 2539 ; Witman v.

Ely, 4 S. & R. 265; Rex v. Young, 1 Burr. 563; Haulden v. Smith, 14 Q. B. 841.

*James H. Torrey* and *S. B. Price*, with them, *E. C. Newcomb*, for appellee.—The court had jurisdiction: In re Gates, 2 Atl. Rep. 216; Jones' Case, 12 Pa. C. C. 229: Bristor v. Tasker, 135 Pa. 110; Austin's Case, 5 Rawle, 203; Com. ex rel. v. Judge, 5 W. & S. 273; In re Davis, 93 Pa. 120; Serfass's Case, 116 Pa. 471; 29 Am. Law Rev., No. 3 (1895); In re Chadwick, 67 N. W. Rep. 1071.

OPINION BY MR. JUSTICE DEAN, January 4, 1897:

The appellant, for many years prior to the decree in this case, was a reputable member of the bar in Lackawanna county. In January, 1889, he was retained as counsel by John G. Jennings, father, and James Jennings, son, to bring two suits against the Lehigh Valley Railroad Company. It was alleged the son had been seriously injured by the negligence of defendant in a railroad accident, and his suit was for resulting damages: The father's suit was for loss of his son's services during minority, because of disability occasioned by the accident. On September 29, 1892, the son's suit came on for trial before Judge CONNELLY. It resulted in a verdict for plaintiff in sum of $5,000. This verdict the trial court set aside because excessive. A second trial was had June 12, 1893, in which there was a verdict for plaintiff for $2,500. On this, judgment was entered which was paid by defendant; Mr. Smith, as counsel for plaintiff, receiving the money.

The second case, that of the father, came on for trial at March term, 1894, before Judge SITZER, specially presiding, and this trial resulted in the discharge of the jury because of disagreement. At November term, 1894, the case was again for trial before Judge PECK, specially presiding; after the jury was sworn, it was discovered one of them was disqualified; a juror was withdrawn, and the case continued. The same thing occurred at May term, 1895, at a trial before Judge SCHUYLER, specially presiding, and the case was again continued. Two days after, the plaintiff, John G. Jennings, made an affidavit, drawn by his counsel, this appellant, charging Judge CONNELLY with having corruptly set aside the verdict in favor of the son

for $5,000; and further, that the deputy prothonotary had packed the jury at more than one of the several trials. Thereupon. Judge ARCHBALD immediately ordered an investigation of the charges, heard the testimony in support of them, and found as a fact they were wholly without foundation. Judge CONNELLY died soon after the judgment was obtained by the son, and no charge had been preferred in his lifetime. After the hearing on the charges of corruption and packing the jury, John G. Jennings had been held to bail to answer in the quarter sessions the charge of perjury. Mr. Smith, on his own petition, as counsel, then made application to this court for a mandamus to Judge ARCHBALD, to discharge Jennings from his recognizance to answer the charge of perjury; and further, commanding him to appoint some disinterested person to act as prothonotary in selecting a jury to try the case of John G. Jennings; he still further, in the same petition, made charges of conspiracy and corruption against Judges CONNELLY and ARCHBALD, Ira Burns and others, for the purpose of defeating a recovery by John G. Jennings against the railroad company. This petition was dismissed in opinion filed October 7, 1895. Then Burns brought suit for damages against Smith and Jennings for libel, based on the unfounded charges in Smith's paper-book in the mandamus application; this suit was arbitrated, and an award had for plaintiff in the sum of $15,000; defendants appealed; the appeal, on rule, after hearing, was stricken off for nonpayment of costs to perfect it. A rule to open the judgment entered on the award was discharged. While these rules were pending, Mr. Smith brought suit against Judge ARCHBALD and seven others to recover damages for an alleged conspiracy to, by corrupt practices, defeat a recovery in the suit of Jennings against the railroad company. This suit was put at issue, and called for trial November 11, 1895, before Hon. J. B. McPHERSON, specially presiding; the plaintiff moved for a continuance, which was refused; he then applied for a change of venue, but having offered no evidence in support of his application, this also was refused. Thereupon, a jury was called, and plaintiff offering no evidence to sustain his averments, a nonsuit was directed. While the rule to strike off the appeal from award of arbitrators in Burns v. Smith and Jennings was pending before Judge GUNSTER, Mr. Smith wrote two letters to

Judge GUNSTER, both reflecting on his integrity and fairness as a judge. On these letters as a foundation, a rule was taken on Mr. Smith to show cause why he should not be disbarred, for the reasons:

1. The said letters reflected upon the judicial honor and integrity of Judge GUNSTER.

2. They tended to influence and prejudice the disposition of the rule pending.

3. The action of attorney Smith was in violation of his duty and oath as an attorney of the court, and in contempt thereof, and an interference with the administration of justice.

The rule was served, answer filed, and hearing had before Judge EDWARDS, who on June 11, 1896, by decree in opinion filed made the rule absolute. See 2 Lack. Leg. News, 152.

From that decree, this appeal is taken. Seventeen errors are assigned; none of them is of such merit as to warrant notice, except the first, which raises two questions: 1. On the facts found, did the court have jurisdiction to make the decree? 2. Does the evidence adduced warrant the finding of fact?

As to jurisdiction: All of the acts of respondent which gave rise to the charges against him, were committed in conducting his legal business as an attorney. Not all were in the prosecution of the suits of the two Jennings against the railroad company, but all grew out of those suits, or were in matters connected therewith. It is impossible to sever his conduct, and determine part of it was disconnected from his professional relation to the court, and part was as attorney in the suits. Of whatsoever misbehavior, if any, he was guilty, it was in his office as attorney. The letters of December 31, 1895, and March 13, 1896, to Judge GUNSTER, were to him as judge of the court having under consideration undecided issues in which Mr. Smith was concerned as attorney. Except by virtue of his office as attorney, he would have had no interest in the litigation the letters refer to, and no standing even for inquiry. The whole subsequent conduct of Mr. Smith as to which evidence was admitted bore wholly on the purport and on the motive prompting these letters. On their face, it was improper to write them to the judge; this, however, may have been one of those mistakes resulting from thoughtlessness, which counsel intensely interested in his cause, and perhaps lacking a very nice sense

of professional propriety, might make, without being guilty of a very grave offense. But if written, as the court has found, with a view to threaten or coerce the judge and to influence the decision, the offense was a gross violation of professional duty, of which the court was bound to take notice by proper proceedings against the offender, who was its own officer. When an attorney seeks to influence the judgment in his cause, either by threats against, or solicitation of the judge, he is wanting in fidelity to the court, and prostitutes his high office to attain an unjust, because not an impartial decision. In such case, to successfully deny the jurisdiction of the court in summary proceedings for disbarment of the guilty officer, would practically strip it of the power of judicial self-defense, and make the bar, instead of an honorable and learned profession, a sort of fortress for the unprincipled, from which they would prey with impunity upon the public without, and attack the court from within. From the very nature of his office, and its relation to the public and the court, a lawyer who enters at his own solicitation by the front door subjects himself to ejection by the back one, if he do not " behave himself well." Nor is there any more reason for calling in a jury to pass upon his misconduct, when he is put without the bar, than for calling in one to pass upon his professional qualifications when he is admitted within it. The subject of investigation and judgment in both cases is one for which the court, and the court alone, is well qualified, while the jury is not. As is pointedly remarked by GIBSON, J., in Austin's Appeal, 5 R. 191, " It is the motive that makes an invasion of the judge's rights a breach of professional fidelity, from which he is to be protected for the sake of the public and the suitors of his court, not for his own." And in Davies' Case, 93 Pa. 120, this court said : " The power of the court to admit as an attorney at its bar a person possessing the requisite qualifications, and to remove him therefrom when found unworthy, has been recognized for ages and cannot be questioned. In fact, the power of removal for just cause is as necessary as that of admission for a due administration of the law. By admitting him, the court presents him to the public as worthy of confidence in all his professional duties and relations. If afterwards it comes to the knowledge of the court that he has become unworthy, it is its duty to withdraw that endorsement, and

thereby cease to hold him out to the public as worthy of professional employment. . . ."

The jurisdiction of the court below in the form of proceeding adopted by it was undoubted, and the assignments of error questioning the jurisdiction are therefore overruled.

The next question is, did the evidence warrant the finding that the letters were written with a view to influence the decision. Where there is sufficient evidence to warrant the finding, and it has been, as here, concurred in by three judges of the lower court, we ought to, and will, hesitate long before setting it aside. As to the letters themselves, although manifestly improper communications, as before noticed, they might possibly, standing alone, not import the grave offense charged; but the court has found they were intended to reflect on its judicial integrity, and to influence its judgment in the litigation then pending. On what evidence? The testimony showed that during the progress of the litigation the appellant had made repeated and persistent attacks on the integrity of all those prominently connected with the litigation in the Jennings cases. The dead judge and the three-living ones were all, time and again, charged either directly or by implication with crimes subjecting them to impeachment and removal from office. These charges were spread upon the records, and repeated in open court by him in his address in his own behalf on the hearing of this rule. The filing of a formal answer and disclaimer of intention to impute guilt, in the face of his written statement of record and direct oral accusations in court, go for nothing. All this evidence was competent as tending to show the real meaning of the letters and the motive in delivering them. And to sustain all these grave accusations by appellant, which, if true, utterly destroyed the private and judicial character of every member of the court, he, although at regular hearings every opportunity was offered him, never adduced one word of what a lawyer would dignify as testimony. Charitably assuming that he believed them himself, they were evidently the product of a mind prone to suspicion, perhaps diseased, and incapable at the time of sound reasoning.

We are all of the opinion the findings of fact and conclusions of law are right. But, the decree here is a permanent disbarment. While we do not intend to belittle the offense, we do

wish to mitigate the punishment. We cannot, in view of the particular circumstances personal to this respondent, close our eyes to the grave consequences to him of the penalty, perpetual disbarment. In the case of a younger man, or of a characterless man, it would not weigh so heavy; in the one case, in some other calling, it might be lived into oblivion; in the second, it would be only a deprivation of power to do mischief. But the appellant is just past middle life; from early manhood up to these proceedings he was of good character, as well as assiduous in the practice of his profession; in that time had secured a fair clientage, and ranked as a good lawyer; he is dependent upon his professional income; at his time of life, he cannot adopt another vocation with much hope of success; therefore, the penalty must in large degree shut him out from obtaining a livelihood. Taking his expectancy of life, the result, if summed up by the ordinary methods of computation, is the infliction · upon him of a fine of many thousands of dollars, leaving him penniless the remainder of his days. A majority of the court is of opinion that, by reason of the facts in this particular case, the punishment is too heavy for the wrong, and that at the end of two years from the 11th of June, 1896, date of disbarment, should he on proper application ask for reinstatement, the court below should grant it, if, in the meantime, nothing further appears against his private and professional character than is apparent from the record before us. With this modification the decree is affirmed and appeal dismissed.