## Joulwan's Case.

*Contempt of court—Approaching juror—Rule to show cause—No necessity for affidavit—Evidence—Summary punishment.*

1. The court may of its own motion, and without an affidavit, enter a rule on a person to show cause why he should not be punished for contempt of court, where it has been brought to the attention of the court that such person had corruptly approached a juror.

2. Where a person corruptly approaches a juror as he is ascending the steps of the court-house to answer his summons, the offence is committed within the constructive presence of the court, and the offender may be summarily punished after the court *in banc* has heard his testimony and that of the juror and decided that the offence was committed.

Rule to show cause why respondent should not be punished for contempt of court. Q. S. Schuylkill Co., June Sess., 1922.

*George M. Roads, E. D. Smith* and *A. L. Shay, amicus curiæ.*

*R. A. Freiler*, for defendant.

BECHTEL, P. J., May 29, 1922.—On Dec. 7, 1921, the following statement of facts, "At the March Sessions, 1921, of the Criminal Court, one Carl Raring, of Pottsville, Pennsylvania, was summoned as a juror. On his way to the court-house on Monday, March 7th, on the first day of the said term, he was approached by Joseph Joulwan, who made inquiry of him and ascertained

2 D. & C.

that he, the said Carl Raring, was summoned and serving as a juror; whereupon he asked the said Carl Raring whether he would be ready to make some money in his capacity as a juror and proposed splitting up the money which they might jointly be able to make out of the corrupt action, which the said Carl Raring might or could render to any party interested in any cases in which he might be impaneled or sworn," was filed by the court. A rule was thereupon directed to issue against the said Joseph Joulwan to show cause why he should not be punished for contempt of court. The respondent filed an answer to said rule, in which he denied the statement of the conversation with the said Carl Raring, and denied that he committed any contempt of court. A hearing having been had and testimony taken, counsel proceeded with the argument and filed a written brief with the court, in which three questions are raised:

1. It is contended that since the contempt was not committed in the presence of the court, the rule should have been issued on affidavit filed.

2. That no contempt of court was committed by respondent.

3. That since the guilt of the accused depends upon an inference from facts which did not occur in the presence of the court and are denied by the defendant, he should not be convicted of contempt.

In approaching the consideration of this case, it seems to us fitting to quote from the language in Doan's Case, 5 Dist. R. 211:

"It has been said that 'the jury-box is the school of civil rights which has elevated the Anglo-Saxon race so far above all others in their knowledge of the principles of liberty and law that those that are brought into court hear cases of every description discussed, the laws expounded, and the rights and duties of every relation of life defined, . . . and it is this institution which has elevated the English nation in their knowledge of their civil rights so far above the people of the continent.'

"If we would protect and preserve this institution, we must strike down the hand of whomever would deal it a foul blow or poison its source of life and purity."

"Under the Act of June 16, 1836, P. L. 784, it is provided that among the powers of the several courts to issue attachments and to inflict summary punishments for contempts of court, the disobedience of parties, jurors or witnesses are specially mentioned. The act provides as follows: 'The punishment of imprisonment for contempt, as aforesaid, shall extend to such contempt as shall be committed in open court and all other contempts shall be punished by fine only.' It is a fair construction of this act to hold that it provides for, and authorizes the imposition of, a fine for an indirect or constructive contempt, as distinguished from an actual one committed in the presence of the court, as one offered elsewhere than in the actual view of the court and during the progress of a trial, and which tends by its operation to degrade or make impotent the authority of the court, or in some manner to impede or embarrass the due administration of justice: 7 Am. & Eng. Ency. of Law, 28:" Greason v. Cumberland Ry. Co., 54 Pa. Superior Ct. 595, 599, 600.

In considering this act in Com. v. Myers, 19 Dist. R. 1136, the court says: "The offence which existed at common law still continues. The restriction or limitation by the act upon the common law is the manner of determining the guilt of the accused and the right of punishment; it is not upon the power of the court to punish for contempt. 'Such power is essential to the due administration of justice, and the legislature cannot take it away or abridge it, although it may regulate its use:' Hale v. State, 55 Ohio, 210; State v. Morrill, 16 Ark. 384. Anything more than regulation of the remedy is beyond

Joulwan's Case.

the constitutional power of the legislature: Carter *v.* Com., 96 Va. 791. In the absence of express language compelling the conclusion, the court will not hold that the legislature undertook by any language contained in section 27, or elsewhere in the Act of June 16, 1836, P. L. 784, to take from the court, where it has immemorially rested, the power to proceed against the author of a constructive contempt and leaving it within the reach of no one obligated by official duty to protect the dignity of the court, placing it wholly with some chance volunteer, or 'person who shall feel himself aggrieved thereby.' "

It has been held to be the duty of the judge to enforce these proceedings, either by summary punishment or by binding the offender over to answer an indictment, even where the misbehavior is toward himself, although personally he should be disposed to ignore it. For, as was said in Rex *v.* Davidson, 4 B. & Ald. 329: "It is not on his own account that he commits; that is a consideration which should never enter his mind. But though he may despise the insult, it is a duty which he owes to the station to which he belongs not to suffer those things to pass which would make him despicable in the eyes of others. It is his duty to support the dignity of his station and uphold the law, so that, in his presence at least, it shall not be infringed."

As to whether or not the conversation here charged, if it really occurred, would constitute a contempt, it has been said in Com. *v.* Kauffman, 1 Phila. 534:

"From the moment the name of the juror is announced in the papers—yes, from the time it is drawn from the wheel—his person is consecrated to the purposes of justice. The law draws round him an invisible cordon, which no man may pass but at his peril. It is as complete the moment he is selected as when he is impaneled."

"A court of general jurisdiction has the inherent authority to punish for contempt any person who wilfully or wantonly attempts by any means whatsoever to improperly influence a juror in the impartial discharge of his duties as such, whether by conversation or attempt to bribe, or to exert any undue influence with an officer in the selection of the *personnel* of the jury:" In re Elliston, 165 S. W. Repr. 987; Keppele *v.* Williams, 1 Dallas, 29.

"To constitute such a constructive contempt, some act must be done, not in the presence of the court, that tends to obstruct the administration of justice or bring the court or judge or administration of justice into disrespect. There may be misbehavior in the presence of the court amounting to contempt that would not ordinarily be said to obstruct the administration of justice, and so there may be misbehavior, not in the immediate presence of the court, but outside of the building in which the court is held, which, on account of its disorderly conduct, would actually interrupt the court, being in session in the conduct of its business, and, consequently, obstruct the administration of justice. As said by Mr. Justice Harlan in Ex parte Savin, 131 U. S. 267: 'We are of opinion that, within the meaning of the statute, the court, at least when in session, is present in every part of the place set apart for its use and for the use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court.'

"This was declared to be the law in a case when the party was charged with contempt in improperly endeavoring to deter a witness from testifying while conversing with him in a hallway adjacent to the court-room:" Greason *v.* Cumberland Ry. Co., 54 Pa. Superior Ct. 595, 600, 601.

In considering the question of conflicting evidence in Houser's Case, 57 Pa. Superior Ct. 43, in which case the defendant was found guilty and fined, which action was sustained, the Superior Court say: "The evidence was to

2 D. & C.

some extent conflicting. It was conceded that these parties talked about the case, and it is apparent that they did not disclose all that was said about it. The credibility of the witnesses, and in a large degree the conclusions to be drawn from their testimony, which depends upon their character, intelligence, knowledge of the subject and personal interest, can be determined much better by the judge who hears them than by appellate judges on an appeal. When the correctness of findings depends upon the view to be taken of the direct testimony of witnesses which is in conflict, it has uniformly been held that they will not be disturbed except for error which clearly appears, and that an apparent preponderance of testimony against them is not sufficient to lead to a reversal, if there is testimony which, if believed, will warrant them."

It requires, it seems to us, very little argument, in the light of these decisions, to vindicate the right of the court to punish in a proceeding such as this under the circumstances here existing should the findings be against the defendant. There can be no question that the offence was committed within the constructive presence of the court, for it took place at the entrance to the court-house grounds, coming up the steps to the building, while the juror was on his way to answer the summons and attend court. Since it was committed in the constructive presence of the court, there can be no question of the right of the court to punish summarily. Nor is it necessary to ground the complaint upon an affidavit. Who would make such an affidavit? The members of the court manifestly could not, for they are not sufficiently familiar with the facts, nor could they testify to them from personal knowledge. To hold that an affidavit is necessary would be to hold that the punishment could only be inflicted and the court vindicated when some third person saw fit to invoke the remedy. This would be contrary to all the doctrine of the law and the decisions as heretofore enumerated.

As to the second proposition advanced by counsel for respondent, there is but one question to be considered. Did the conversation actually take place; for if it did, there can be no question that the offence is made out. The testimony was heard by the court *in banc*, and we were all of the opinion that the witness, Carl Raring (taking the most charitable view of his testimony), was endeavoring throughout to shield the respondent. The respondent's testimony was most unsatisfactory. His memory was very poor and his method of testifying, his recollection and his evidence made a most unfavorable impression upon the minds of us all. There can be no question of our right to make findings of fact and conclusions of law, even though the evidence is conflicting, and even though it is not supported by any outside witnesses. Were it necessary to have witnesses to offences of this character, they would never be punished, as parties do not attempt to influence jurors in the presence of others. We are unanimously of the opinion that the evidence in this case, in the light of the authorities hereinbefore set forth, clearly proves the defendant guilty of the offence charged. We, therefore, make the following

### Findings of fact.

1. That Carl Raring, of Pottsville, Pennsylvania, was summoned as a juror in attendance at the March Sessions of court, 1921.

2. That on his way to the court-house on Monday, March 7th, the first day of the said term, he was approached by Joseph Joulwan, the respondent, who made inquiry of him and ascertained that he, the said Carl Raring, was summoned and serving as a juror.

3. That the said Joulwan said to the said Raring, "If something turns up, would you be willing to make some money," and that the suggestion was made

that the money was to be divided between the said Raring and the said Joulwan, in what proportion does not definitely appear.

4. That said conversation took place at the foot of the steps coming up the court-house yard, preliminarily to said Raring entering the building and reporting for jury duty.

5. That said Joulwan accompanied said Raring up into the corridor of the building and pointed out to him the court-room in which he was to report.

On these findings of fact we make the following

### Conclusions of law.

1. That the said Joulwan is guilty of contempt of this court.

2. That said contempt was committed in the constructive presence of the said court.

The said Joseph Joulwan is hereby adjudged guilty of contempt of court and directed to appear before the court for sentence on Monday, June 5th, at 10 o'clock A. M.

From M. M. Burke, Shenandoah, Pa.