## Snyder's Case.

278

Argued May 26, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*John Robert Jones,* with him *R. J. Graeff, James J. Gallagher* and *R. Albert Freiler,* for appellant.—The court does not have the power to try and to punish a person summarily as a contempt of court for publications out of court: Com. v. Davies, 1 W. N. C. 18; Jared Ingersoll's Case, 1 W. N. C. 18; Foster v. Com., 8 W. & S. 77; Com. v. Newton, 2 Phila. 262; Com. v. Crans, 2 Pa. L. J. 441; Passmore Williamson's Case, 26 Pa. 9; Steinman and Hensel's Case, 95 Pa. 220.

Plaintiff, who has an interest in a matter at issue, should not sit even though the case be one in which a jury is a part of the tribunal: Phila. Library Co. v. Ingham, 1 Wharton 72; Phila. v. Fox, 64 Pa. 169; Com. v. White, 161 Pa. 576.

The rule to adjudge defendant guilty of contempt of court, the verdict of guilt thereon being for a contempt committed out of court, was irregularly, improperly and improvidently issued because it was not founded upon any complaint supported by affidavit.

The rule issued by the common pleas against defendant to show cause why he should not be adjudged guilty of contempt of court and should not be disbarred, the trial on the merits on such rule, and the judgment of the court dismissing the rule, were conclusive and invalidate the rules issued by the quarter sessions, the joint trial of defendant on such rules and the judgment, orders and sentence rendered and imposed by the court thereon.

There was no contempt of court: Com. v. Widovich, 295 Pa. 311; Steinman and Hensel's Case, 95 Pa. 220.

In view of the fact that the contempt of which the court found defendant guilty was a constructive con-

tempt committed in the course of a political campaign, that defendant was tried for contempt of court and for disbarment in one and the same trial and was disbarred on the same finding of the court at one and the same time, it is submitted that such sentence constitutes not only the imposition of an excessive fine but also the infliction of a cruel punishment: Breen's Case, 93 Pac. 1104.

A district attorney cannot be removed from office by a summary disbarment proceeding: Maginnis's Case, 269 Pa. 186.

The acts charged were those of a citizen.

*George H. Kaercher* and *C. E. Berger,* with them *John B. McGurl,* for appellee.—The court had jurisdiction: Com. v. Myers, 19 Pa. Dist. R. 1136; Williamson's Case, 26 Pa. 9; Greason v. Ry., 54 Pa. Superior Ct. 595; Wilhelm's Case, 269 Pa. 416.

Although Judge Houck sat throughout the proceedings, neither his right to do so, nor the propriety thereof, was questioned by the respondent. On the contrary, counsel for respondent expressly disavowed any such intention. It is irregular and improper to raise this question here in view of the failure to raise or discuss it in the court below.

"But independent of supporting affidavits and prior notice of such grounds, a court has jurisdiction, of its own motion, to direct the issuance of a rule, either for contempt of court or for disbarment, or both": Steinman and Hensel's Case, 95 Pa. 220; Scouten's App., 186 Pa. 270; Wilhelm's Case, 269 Pa. 416.

"Where a case has not been decided on its merits, res adjudicata cannot be interposed as a bar": Weigley v. Coffman, 144 Pa. 489; Pennebaker v. Parker, 33 Pa. Superior Ct. 458; Robb v. Gas Coal Co., 216 Pa. 418; Pittsburgh Construction Co. v. R. R., 227 Pa. 90.

Respondent was guilty of contempt.

The court had power to disbar the district attorney: McGinnis's Case, 269 Pa. 186.

OPINION BY MR. JUSTICE WALLING, October 1, 1930:

The transactions which form the basis of the two orders here appealed from were heard together by the trial court and we will so consider them. The appellant, Charles A. Snyder, is the district attorney of Schuylkill County, to which office he was elected for a term commencing January, 1928. The court of common pleas of that county consists of three judges, learned in the law, of whom, Hon. HENRY HOUCK, having been appointed by the governor, was chosen as his own successor at the election in 1929. In the primary campaign of that year, the respondent bitterly opposed the candidacy of Judge HOUCK, and, as found by the trial court, caused a cartoon to be printed and circulated, representing, inter alia, the judge as being controlled by his father, Paul W. Houck, in refusing the district attorney's request to bring to trial two of the county commissioners who were under indictment for alleged official misconduct. This cartoon appeared on September 10th, and three or four days thereafter, because of it, Judge HOUCK's father, Paul W. Houck, made informations against the respondent, charging him with criminal libel and also with conspiracy to violate the Act of May 25, 1897, P. L. 85, which makes the circulation of anonymous defamatory matter a misdemeanor. The respondent was arrested and, so far as appears, the charges are still pending.

On the morning before the cartoons appeared, in opposing the application for continuance of the county commissioners' cases (which was made to and granted by Judge HICKS, another member of the court), the respondent made certain remarks, claimed to reflect upon the integrity of the court. During that primary campaign, Snyder also made political speeches in various parts of the county against Judge HOUCK; the one made at Tamaqua on the evening of September 14th, was sten-

ographically reported and not only assails Judge HOUCK and his father, but also the county commissioners, who were then under indictment, and severely and unfairly criticized the disposition previously made by the court of a criminal case.

Some months previously, what appeared as an interview with the respondent as district attorney, was published in the *Philadelphia Record.* This made serious charges against the county commissioners, then being prosecuted by him and also reflected upon the judges. Just before the primary election the respondent, as the court found, made statements in the sheriff's office, as follows: "This is a campaign of decency. HENRY HOUCK is all right, but I have him so covered with pitch that no matter what his decisions are within the next ten years nobody will have any confidence in them." On September 30, 1929, the three judges of that court filed of record in the court of common pleas a statement embodying the matters, somewhat as above outlined, and entered a rule upon Mr. Snyder to show cause why he should not be punished for contempt and why his name should not be stricken from the roll of attorneys. Respondent made answer in the nature of a demurrer which was overruled and the case proceeded to a hearing, three prominent members of the local bar acting by appointment as amici curiæ, and the respondent being represented by counsel. At the conclusion of this hearing, at which respondent had been called for cross-examination and interrogated at some length, the court made an order as follows: "And now, February 3, 1930, the bases for the rule in this proceeding are the speech and conduct of the respondent in referring to certain cases pending in our court of quarter sessions of the peace at the time when the rule was issued. But, owing to a misapprehension by some of us as to the law and practice in proceedings of this kind, this proceeding was filed in the court of common pleas. The question whether or not this court has jurisdiction of all that the rule implies is debatable,

and we shall, therefore give the respondent the benefit of the doubt in the premises and give the matter no further consideration here and now.

"And now, February 3, 1930, the rule is discharged at the costs of the county without prejudice, however, against the right of the court of quarter sessions of the peace to take such action in the premises as it may deem advisable, or of this court hereafter to take any action that it may deem proper.             KOCH, P. J."

On the same day the judges filed a new but similar statement against the respondent in the court of quarter sessions, to which he also submitted a like answer which was overruled and the testimony retaken, although the respondent was not again called for cross-examination. No testimony was submitted in his behalf at either hearing. In due course the court submitted findings of facts sustaining the charges, and the President Judge, at the end of a vigorous opinion, made orders as follows: "And now, April 7, 1930, the rule upon Charles A. Snyder to show cause why he should not be disbarred is made absolute, his name is stricken from the list of lawyers admitted to the bar of this court, and the clerk of the Court of Quarter Sessions of the Peace is directed to forthwith certify this order to the prothonotary of this county and to the orphans' court and the clerk thereof, as well as to the register of wills.

"By the court,

"KOCH, P. J."

"And now, April 7, 1930, the rule upon Charles A. Snyder to show cause why he should not be adjudged guilty of contempt of court is made absolute, and the said Charles A. Snyder is ordered to appear in court at 10 o'clock on Monday, the 14th of April, 1930, to receive his sentence.

"By the court,

"KOCH, P. J."

"April 14, 1930. The sentence of the court is to pay a fine of $2,500 and secure the same to be paid within ten

days, otherwise to be imprisoned for a period not exceeding three months, and placed in the custody and charge of the sheriff. County to pay costs.

"KOCH, P. J."

Judge HICKS wrote a dissenting opinion refusing to concur in the order disbarring the respondent.

The right of a court to initiate proceedings to punish an attorney for contempt or for his disbarment, without any sworn information, is undoubted: Maginnis's Case, 269 Pa. 186. This power is necessary not only for the protection of the court, but also of suitors and of the public.

Inasmuch as the proceedings in the court of common pleas did not reach a decision upon the merits and was dismissed without prejudice, it did not prevent the present proceedings in the court of quarter sessions. See Weigley v. Coffman, 144 Pa. 489. In other words, it was not res judicata.

Referring to the charge of contempt of court, the right to punish therefor is inherent in all courts, but the manner of its exercise is regulated by the Act of June 16, 1836, P. L. 793. Sections twenty-four and twenty-five thereof provide for the punishment of contempts committed in open court: Stewart's Purdon's Digest, volume 1, page 737. As to contempts not so committed, sections twenty-six and twenty-seven (same book and page) provide: (Section 26) "No publication, out of court, respecting the conduct of the judges, officers of the court, jurors, witnesses, parties, or any of them, of, in or concerning any cause depending in such court, shall be construed into a contempt of the said court, so as to render the author, printer, publisher, or either of them, liable to attachment and summary punishment for the same." (Section 27) "If any such publication shall improperly tend to bias the minds of the public, or of the court, the officers, jurors, witnesses, or any of them, on a question depending before the court, it shall be lawful for any person who shall feel himself aggrieved

thereby, to proceed against the author, printer and publisher thereof, or either of them, by indictment, or he may bring an action at law against them, or either of them; and recover such damages as a jury may think fit to award."

In the instant case the punishment was as provided for a contempt in open court; but the only proof thereof was the remarks of the district attorney in opposing the continuance of the trial of the indictment against the county commissioners. These remarks as reported are printed in the record and we have studied them and find nothing therein supporting the charge. Judge HICKS, who was presiding, says nothing was said that he understood as a contempt of court, and former Judge BERGER, representing the appellee, frankly made a like statement. It is urged, however, that the language and acts of the respondent, while not said or done in open court, were prejudicial to pending cases and hence a constructive contempt. If so, it was punishable by indictment. To construe the scattering of cartoons broadcast over the county or the general making of political speeches as contempts punished as if done in open court is to nullify sections twenty-six and twenty-seven of the Act of 1836, above quoted. This cannot be done. Contempts so punishable must be limited to acts done in or so near the court as to interfere with its immediate business, like tampering with jurors during the trial, although not done in the face of the court. Savin's Petition, 131 U. S. 267, holds that to dissuade a witness while waiting in the jury room is a contempt in presence of the court. And a member of the bar who insults an associate judge during a session of the court, although outside of the courtroom, is guilty of a contempt committed in the presence of the court (Scouten's App., 186 Pa. 270); as is also an attempt to corrupt a juror who is entering a courthouse: Joulwan's Case, 2 Pa. D. & C. 188. The case of Greason v. Cumberland Valley R. Co., 54 Pa. Superior Ct. 595, properly holds that to tamper

with a juror while the panel was sent by the court, in charge of a bailiff, to visit the locus in quo, was punishable summarily as a contempt of court. An act so punishable must be done in the actual or constructive presence of the court, otherwise it becomes a misdemeanor, subject to indictment as such. In Doan's Case, 5 Dist. R. 211, the late Judge YERKES, in a comprehensive opinion held that conversing with a grand juror, away from the court and grand jury room, was a contempt of court punishable by indictment. A like conclusion is stated by Judge SHULL, in Com. v. Myers, 19 Dist. R. 1136. It follows that the summary conviction and sentence of the respondent for acts done out of court cannot be sustained.

Coming to the question of disbarment; this may be for acts done in or out of court: Balogh v. Jackson, 272 Pa. 482, 487; Wilhelm's Case, 269 Pa. 416. One of the main grounds on which the order of disbarment is based in the instant case was the promulgation and circulation of the cartoon; for this, the respondent is being prosecuted on two criminal charges. While these are not a bar to the disbarment proceedings, yet, under the prevailing and what we regard as the sound rule, usually the latter should not be forced to a conclusion while the criminal prosecutions are pending. In the ordinary case, an attorney's name will not be stricken from the rolls on account of an indictable offense until it has been disposed of in the criminal court. See Ex parte Wall., 107 U. S. 265. See also 6 C. J. 586. It is manifestly unfair to send a defendant to jury trial under the weight of judicial condemnation for the same alleged acts. Furthermore, in defending the disbarment charges he might be compelled to take a position prejudicial to his trial before the jury. When a criminal case is ended, however, the disbarment proceeding may properly proceed. See Barach's Case, 279 Pa. 89. And an attorney may be disbarred for an offense of which he has been pardoned: Wolfe's Disbarment, 288 Pa. 331, or even ac-

quitted. Therefore, the trial court erred in passing upon the complaint as to the cartoons during the pendency of the criminal charges; for this reason, it should have dismissed this portion of the complaint, without consideration and without prejudice, and hence we now order and direct that the record and judgment in this case shall have no other force and effect. The advisability of withholding a final order in the disbarment proceeding, based on the cartoon, so long as the respondent is of good conduct, can be properly determined at the conclusion of the criminal prosecutions resulting from the same transaction. The other elements embraced in the complaint while requiring serious consideration, do not call for a permanent disbarment (see Ex parte Steinman and Hensel, 95 Pa. 220), which is one of the severest penalties that can be inflicted upon a member of our profession: Smith's App., 179 Pa. 14, 24. Responsibility for the published interview in the *Philadelphia Record* was not fastened upon the respondent, hence that could not be considered in deciding the case.

Of course, assertions made in the heat of a campaign should not be taken too seriously, and criticism of candidates for public office, as well as the conduct of public officials and the decisions of courts, is privileged, so far as made on reasonable ground and in good faith. The statements by respondent at Tamaqua prejudicial to a fair trial of the county commissioners, then being prosecuted by him, also, in the same address, falsely representing the action of the court by the President Judge so as to subject it and him to undue criticism, and the remarks made in the sheriff's office concerning Judge HOUCK, cannot be excused on the ground of privilege. So far as brought to trial, the county commissioners were acquitted. It is professional misconduct for an attorney to make public addresses which tend to prejudice the consideration of pending litigation: Wilhelm's Case, supra. Although in the latter case the action of

288

the court was based also upon other grounds. The Tamaqua address contained numerous other defamatory remarks, unnecessary to repeat.

There is another consideration; the respondent is the district attorney of Schuylkill County, in the midst of his term of office, and although disbarred would continue to be such until removed from office according to law. This might be done under the Act of March 31, 1860, P. L. 382, section 18 of which provides, inter alia, as follows (page 389) : "If such district attorney shall be convicted of any crime, for which he may be sentenced to imprisonment, by separate or solitary confinement at labor, in addition thereto, his said office shall be declared vacant by the court passing such sentence." By proceedings taken under sections 1 and 2 of the Act of May 2, 1905, P. L. 351-2 and section 907 of the Act of April 9, 1929, P. L. 177, 239, he may be superseded as to particular cases, one or more, by an appointee of the attorney general, whenever in the opinion of the President Judge of the district "the case is a proper one for his [the attorney general's] intervention." So, also, being an officer elected by the people he could, after hearing, be removed by the governor on the address of two-thirds of the senate. See article VI, section 4 of the state Constitution. See also Com. of Penna. v. Reid et al., 265 Pa. 328. Where the Constitution or statute points out a method for the removal of a public officer, that is exclusive of other methods: Com. ex rel. v. Benn, 284 Pa. 421. But until removed from office, or superseded as to a particular case or cases, in some lawful manner, it would create an embarrassing situation to deprive him of the right to appear in court and represent the Commonwealth. A district attorney is required to be a member of the bar; he is also a quasi-judicial officer: Com. v. Nicely, 130 Pa. 261, 270. The authorities are conflicting as to whether a judge, who must be a member of the bar, is subject to disbarment. Granting the court's power to disbar a district attorney, a reason

against its exercise is the inconvenient situation thereby created and the statutory provisions to which reference has been made. While a district attorney retains his office he should not be deprived of the right to appear in court as such and represent the Commonwealth, even if temporarily suspended for misconduct: In re Maesretti, 93 Pac. (Nev.) 1004.

While the rule is clear that a judge may punish for a contempt committed against himself in official capacity and also may hear and determine a proceeding for the disbarment of a member of the bar of his own court, yet, under the peculiar facts of this case, in our opinion, Judge HOUCK should have declined to sit at the hearing of these rules. His place could readily have been taken by a judge called from another district. Precedents for so doing are not lacking. See Sherwood's Investigation, 259 Pa. 254. In Cooke v. United States, 267 U. S. 517, 45 Supreme Court Reporter 390, Chief Justice TAFT, speaking for the court, says (page 396) : "The case before us is one in which the issue between the judge and the parties had come to involve marked personal feeling that did not make for an impartial and calm judicial consideration and conclusion, as the statement of the proceedings abundantly shows. We think, therefore, that when this case again reaches the district court, to which it must be remanded, the judge who imposed the sentence herein should invite the senior circuit judge of the circuit to assign another judge to sit in the second hearing of the charge against the petitioner." To like effect, see Toledo Newspaper Co. v. U. S., 237 Fed. 986. In the instant case, aside from the fact that Judge HOUCK's father was prosecutor in the criminal cases, the record discloses a prior feeling of animosity between him and the respondent. Also, that the judge, shortly before going upon the bench had severely arraigned Snyder in a public address. Then, the cartoon, involving both father and son and the respondent's utterances in the address at Tamaqua and

especially in the sheriff's office were such as to naturally arouse intense animosity on the part of Judge HOUCK. The situation thus existing should have warned him that no matter how clear he was, in his own mind, that he could act impartially, considered from the standpoint of humanity in general, this was so highly improbable that a large part of the public would never believe it, and hence the avoidance of even the appearance of evil, so important in a judge, required him to refuse to sit in a matter in which he was so directly interested. It is fair to say that the record affirmatively discloses nothing, by question or comment, showing bias on part of Judge HOUCK.

In appeal No. 260, January Term, 1930, the order making absolute the rule to show cause why the respondent, Charles A. Snyder, should not be adjudged guilty of contempt of court is reversed as is also the sentence imposing a fine of $2,500 upon him therefor. The costs of this appeal to be paid by appellant.

In No. 34, January Term, 1931, being the appeal of Charles A. Snyder from the order making absolute the rule for his disbarment, the order is modified and in place of being disbarred the respondent is suspended from practice in the several courts of Schuylkill County for the period of one year, beginning at the date of the filing of this order, saving to him the right to appear as district attorney and represent the Commonwealth whenever his duty so requires. The costs to be paid by Schuylkill County.