**Vernis FULMER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 17043.**

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 19, 1969.

Rehearing Denied Oct. 17, 1969.

Emmett Colvin, Jr., Dallas, for appellant.

H. T. Burk, Asst. Gen. Counsel, State Bar of Texas, Austin, David Adams, Dist. Atty. of Nacogdoches, Timothy D. Eyssen, County Atty., Wichita County, Wichita Falls, and Davis Grant, Gen. Counsel, State Bar of Texas, Austin, for appellee.

## OPINION

MASSEY, Chief Justice.

The appeal is from a judgment of disbarment.

By a special issue jury verdict Vernis Fulmer, who had been licensed by this State to practice law, and who possessed a membership card in the State Bar of Texas, was found to be guilty of barratry and of wilful violation of certain of the Canon of Ethics of the State Bar Rules. See Vernon's Ann.Tex.St., Art. 320a–1, the State Bar Act. Under the provisions of Article XII of the State Bar Rules (within the provisions of Art. 320a–1) he was thus shown to be guilty of professional misconduct and the trial court rendered judgment in accord with the provisions of law (see Sec. 28 of the Article).

The judgment provided as follows: "It is, therefore, ORDERED, ADJUDGED AND DECREED by the Court that the defendant, Vernis Fulmer, be, and he is hereby, disbarred as an attorney at law; and that he shall hereafter exercise none of the privileges and prerogatives of the office of attorney at law.

"It is, therefore, ORDERED, ADJUDGED AND DECREED that the defendant, Vernis Fulmer, be, and he is hereby, permanently enjoined, subject to his right to apply after the expiration of five years from the date of final judgment for reinstatement, from holding himself out as an attorney at law, accepting fees for legal services performed after September 21, 1967, performing legal services of any nature, whatsoever, using any letterhead, envelope or other printed stationery, or having his name printed on the door of an office in connection with the words 'attorney at law', 'counsellor at law' or 'lawyer', or listing his name in any legal directory or telephone directory as an attorney at law."

Coupled with the foregoing was additional provision relative to surrender by Fulmer of his license to practice law and membership card in the State Bar of Texas to the Clerk of the trial court; the transmittal thereof to be made, etc.

A point of error complains of the denial by the trial court of the defendant Fulmer's Motion to Stay civil proceeding of disbarment since there pended two criminal cases arising out of one of the transactions upon which the State Bar predicated the suit for disbarment. The defendant contends that forcing him to trial in the civil proceeding necessarily denied his rights under the fifth, sixth and fourteenth amendments to the United States Constitution (as applied to the pending criminal proceedings).

■ None of these Constitutional Amendments had applicability to inhibit prior trial of the civil proceeding. The Texas Disbarment Act does not abridge any privilege or immunity of the defendant as a citizen of the United States, and the trial of the civil proceeding was not a criminal prosecution of a case in which he was guaranteed a speedy and public trial, nor was the defendant compelled to be a witness against himself in any criminal proceeding pursuant to conduct of the prior civil proceeding. He cites In re Snyder's Case, 301 Pa. 276, 152 A. 33, 76 A.L.R. 666 (1930) and says that the opinion therein appears to express the sound view which we should follow, i. e., that it was manifestly unfair to send him to trial in the criminal trial under the weight of judicial condemnation pursuant to the judgment appealed from for the same alleged acts, when in defense of the disbarment charges he was or may have been compelled to take a position prejudicial to that he might desire to assume in the criminal case.

It is to be noticed that the acts of the attorney In re Snyder's Case were committed in a private capacity and not in his character as an attorney. In the opinion the court made no distinction between disbarment for acts committed in the private capacity and acts committed in a professional capacity. The cases usually make such a distinction, and therefrom the rule deducible is that when the offense for which a criminal charge is pending was committed by the attorney in his private character, and not in his character as an attorney, disbarment proceedings for the same conduct should await termination of the criminal charges. See 76 A.L.R. 674, Annotation: "Pendency of criminal charge as bar to or ground for postponement of disbarment proceedings", wherein it is stated that the majority of cases support the view that it it no objection to disbarment proceedings that an indictment is pending against the attorney for the same misconduct.

■ In any event our interpretation of the statutory law of this state is that regardless of whether an indictment might be pending against an attorney a suit for his disbarment on the same ground and for the same offense a civil disbarment proceeding may be brought and prosecuted to judgment. See the State Bar Act, Rules Governing the State Bar of Texas, V.A.T.S., following Title 14, "Attorneys at Law", State Bar Rules, Article XII, Sec. 8, "Professional Misconduct, What Constitutes". Informative and persuasive, aside from the specific statutory authorization which we believe existent, is the case of Meyer v. Tunks, 360 S.W.2d 518 (Tex.Sup., 1962), a case involving a civil action for the removal of an elected official.

One point asserts error on the part of the trial court in its refusal to grant the defendant a new trial because of juror Irene Warren's concealment of personal prejudice against him on the *voir dire* examination of the jury panel.

Proof relative to the matter came on the hearing of the defendant's motion for new trial. The defendant had issued a subpoena for Irene Warren to appear for the hearing, but she had not been served. It appeared that she was confined to her bed in a hospital and medical evidence was presented that she was unable to be present for the hearing. However, counsel for the defendant announced to the court that he was ready to proceed on his motion for new trial without her. There was no motion for continuance filed by the defendant at any time in connection with the hearing of the motion for new trial.

From the record of the *voir dire* examination the defendant has shown that during his questioning of the panel in general and of the juror Irene Warren in particular, the following inquiries were put: (a) In general: " * * * Is there anyone else that feels the way Mr. Spurlin did, just want to stand up and tell me you feel like you have some strong feelings one way or the other and don't think you would be a fair juror, * * *." There was no response by Mrs. Warren. (b) In specific: after stating in answer to questions that she had served as a juror many times, she volunteered as follows, "And I would like very much not to serve this time." Later on she was asked "Okay, Mrs. Warren, is there any reason that you can think of that might be something that would influence your decision one way or another before you heard all of the evidence in this lawsuit?"; to which she replied "No, only thing I would like not to be on the jury, that's the only thing I know."

On the hearing of his motion for new trial the defendant presented a Mrs. H. C. Warren, sister-in-law of the juror, who testified that after the juror had received her jury summons she had made statements to the witness (Mrs. H. C. Warren) concerning her opinion of the defendant, expressing the opinion that the defendant ought to be stopped from practicing law. She elaborated upon her opinion and recited incidents of which she had heard giving rise to her opinion.

On cross-examination the witness (Mrs. H. C. Warren) testified that she admired the defendant very much.

Two other witnesses gave testimony bearing upon statements of Irene Warren. One was H. C. Warren. He testified that he heard her say that what she had heard about the defendant prior to the time she served as a juror had absolutely no influence on her verdict in the case. The other was a Mr. Davis, County Attorney in Nacogdoches County, who testified that upon his inquiry Mrs. Irene Warren denied having made to her sister-in-law, Mrs. H. C. Warren, the statements attributed to her. Both statements, to Warren and to Davis, were made after completion of the trial.

■ In testing the admissibility and probative force of the evidence tendered we view both the subject matter and purpose of its tender. The testimony of Mrs. H. C. Warren concerning the statements of Mrs. Irene Warren made before she served as a juror was admissible evidence as an exception to the hearsay evidence rule, constituting an expression of mental condition or state of mind at the time of the making of the statement and not as to the truth of the matter stated or expressed. The testimony of H. C. Warren and County Attorney Davis was inadmissible under the hearsay rule for it related to the truth of matters stated or expressed and not to the mental condition or state of mind of the declarant at time of making the statement. As such it does not qualify as an exception within the hearsay rule. See VI, Wigmore on Evidence, 3rd Ed., Book I, "Admissibility", Title II, "Analytic Rules", Sub. Title II, "Exceptions to the Hearsay Rule", and Sub. Title III, "Hearsay Rule not Applicable", generally and especially Sec. 1790, "Utterances indicating Circumstantially the Speaker's Own State of Mind."

The testimony of Mrs. H. C. Warren was before the court to be accepted or rejected as factual by the trial court at time of the hearing of the motion for new trial. The court chose to reject as factual and to dis-believe the testimony presented on behalf of the defendant, as was its right.

The point of error is overruled.

■ During the cross-examination of M. G. Holt, who was also one of the attorneys for the defendant, an event occurred which has been made the subject of a point of error. The witness was interrogated concerning a call he had made upon a Mr. Causey, who had been an earlier witness. On cross-examination by the attorney for the State Bar Mr. Holt had his attention directed to the fact that there were opinions upon the Canons of Ethics of the State Bar. Mr. Holt stated that he was familiar with some but not all of them. He testified that he "thought" he might be called to testify as a witness when he was investigating the witnesses, including Causey, in advance of the trial. He answered in the affirmative, to a question, as follows: "Are you aware of an opinion which holds that an attorney should not represent a client in court knowing that he will appear as a witness in a case in advance of it?"

We overrule the point of error predicated upon complaint of the line of questioning and the specific question quoted. We hold that the error was harmless within the meaning and intent of Texas Rule of Civil Procedure, 434.

■ Several additional points of error will be jointly discussed. Defendant's statement under the points reads, as follows: "Permeating the trial of this cause was the thrust of the State in projecting to the jury that there was something improper, illegal, or unethical in the use of a concealed recording device in questioning witnesses and that there existed some duty to inform. This prejudicial thread was woven into the State's argument, even to the point of inferring that Appellant's counsel would and might have engaged in wiretapping—a federal criminal offense under Section 605 of the Communications Act. Appellant's objections were consistently overruled as well as his objection to the Court's Charge, and

his Motion In Limine to restrict the State's counsel in argument from stating to the jury that the use of a concealed recording device was improper, illegal, or in violation of any law or Canon of Legal Ethics. A requested instruction to the same effect was denied by the Trial Judge. There was discussion in the jury room to the effect that the use of concealed tape recorders was unfair, illegal, and unethical."

In an examination of the record made on the motion for new trial it is observed that only one juror stated that the discussion in the jury room was to the effect that the use of concealed tape recorders was unfair, illegal, and unethical. Other members testifying stated that they did not hear or did not remember having heard such statements. As an issue of fact it is to be presumed that the trial court concluded that no such discussion occurred.

As the first witness called by the State's counsel the defendant testified without objection that it was upon his suggestion and with his approval that agents working in the investigation of his cases carry along and use tape recorders. Relative to the concealment of the fact that conversations with witnesses and parties were being recorded when interviews were in progress, he answered the question asked, by replying "I don't instruct them to misrepresent or mislead"—and went further by volunteering—"and if they didn't ask them, well, they certainly wouldn't tell them because they wouldn't get any information."

Testimony from other witnesses, elicited without objection, disclosed that defendant's agents and investigators had on several occasions concealed—or at least had not disclosed—that conversations with witnesses were being recorded on a device designed for that purpose.

Certainly there are occasions upon which it would be proper to use concealed recording devices pursuant to investigations. We do not condemn such use in proper cases, and what constitutes a proper case is a matter of conflicting opinion of attorneys and laymen.

■ Section 605 of the Communications Act does not make "wiretapping" a prohibited act, intrastate or interstate, and no federal law is applicable to the circumstances presented under the points of error now under consideration and discussed at this point of the opinion. See 47 U.S.C.A., Sec. 605, "Unauthorized publication or use of communications".

■ It was after the evidence was closed and before the arguments were made to the jury that the defendant filed his Motion in Limine that the trial court instruct counsel for the State of Texas that they should not in their arguments to the jury refer anywise "to the use of a concealed recording device as being improper, illegal, in violation of the law, or in violation of any canon of legal ethics." The court refused to instruct counsel as requested.

During the course of jury argument it was the attorney for the defendant who first mentioned the matter of his agents' use of recording devices. Thrust of his argument was that in the interview of some types of witnesses and in some circumstances use of a recording device was absolutely essential if successful investigations were to be made; that its use would enable the investigator to protect himself against witnesses of certain kinds. Further, relative to occasion of an investigation in a case involving a Miss O'Brien, who had been instructed not to talk to anyone but was interviewed (or attempted to be interviewed) by agents of the defendant who had used (or attempted to use) a recording device which was concealed, the attorney argued that an investigation was necessary to be made and as part of his argument stated: "* * * it should be done in a pleasant manner if possible but get the information and get the facts if you can, otherwise you have not represented your client."

In the rebuttal argument of counsel for the State Bar he referred to an interrogation of a witness for the defendant who had done investigation work, and wherein he had asked him if he "felt good" about his use of a concealed recording device. In his argument counsel stated " * * * and he ducked his head, 'No, I didn't', or words to that effect. Now, that is tragic because that man in his heart knows that that's not right." An objection was interposed in behalf of the defendant, which was overruled. Counsel said no more on the subject at this point. A little later he argued "Now, they talk about there is nothing improper with the use of recording equipment * * *." An objection was made and overruled and the same bill of exceptions taken as in the instance first mentioned in advance of counsel's proceeding with his argument. Then counsel for the State Bar spoke as though he might be disposed to agree with defendant's attorney's argument relative to necessity therefor in an investigation requiring a certain type of witness (referring to the witness Waggoner wherein defendant's counsel had pointed out the necessity therefor in his prior argument) but attacked the use of a concealed tape recorder in the interview (or attempted interview) of Miss O'Brien, arguing that the circumstances were not such as justified the actions of the agents of the defendant. At the conclusion of his argument in that vein, State's counsel said further "I remember it was Colvin (defendant's counsel) now that said, 'Oh yes, you owe a duty to your client to get the facts for your client if you can.' Does that include wire tapping and all that kind of stuff, is that the primary object?"

At the time of the statement last quoted there was no objection by counsel for the defendant. We consider it subject to objection, but curable upon instruction by the court. There having been no objection which we consider applicable thereto no instruction was required and the error was waived.

Relative to the matter of the argument of the State's counsel we perceive no reversible error. Transcript of his entire argument comprises 75 pages, of which one comprised his argument upon the matter of using concealed recording devices. Counsel did not inflame the minds of the jury, nor did he unduly seek to fan the flames of prejudice predicated upon the use of concealed recording devices; rather did he devote his argument to the facts to which there had been testimony, drawing inferences deducible therefrom within the bounds of propriety, and rebutting the argument of opposing counsel.

The points of error are overruled.

■ A final point of error advances the contention of cumulative error; defendant's assertion being that the circumstances pointed out relative to the conduct of the trial, the testimony of the witnesses, conduct and argument of counsel, acts of the jury and of jurors, etc., collectively, if not singly, were sufficient to demonstrate that defendant did not receive a fair trial. In that connection counsel directs our attention to those matters which we have made the subject of discussion in the opinion, and also to numerous other matters which he contends should also be taken into consideration in ruling upon the point.

We have reviewed all matters to which our attention has been directed, together with the whole record. We are impressed with the fact that of fifteen separate instances wherein the defendant was alleged to have been guilty of improper solicitation of employment as an attorney, there were only five in which the finding of the jury was in accord, and ten instances in which the jury refused to find against the defendant. Consideration given the evidence in the record we deem this strong indication that the minds of the jury were not inflamed and that the answers returned to those of the special issues which found against the defendant were the product of its proper deliberation.

To further lengthen the opinion in discussion of all the matters presented would serve no worthwhile purpose. Attorneys interested in disposition of the case are familiar with them and they are in the record for review should the case be carried further by appeal. Suffice it be to say that under appropriate tests we have concluded and hold that the errors complained of, singly or collectively, amounted to no more than harmless error and not to reversible error. T.R.C.P., 434.

Judgment is affirmed.