## Greason *v.* Cumberland Railway Company

*Contempt of court—Constructive contempt—Influencing juror—Act of June 16, 1836, P. L. 784.*

1. To constitute a constructive contempt of court some act must be done, not in the presence of the court, that tends to obstruct the administration of justice or bring the court, or judge, or administration of justice into disrespect.

2. Where a friend of a plaintiff in an action against a railway com-

pany has been active in the preparation of the plaintiff's case, and after the jury has been sworn and impaneled accompanies the parties and the jury to an inspection of the premises, and on the return in a street car engages a juryman in conversation and denounces to such juryman, the superintendent of the defendant, as a liar, such person may be fined for contempt of court.

Argued March 10, 1913. Appeal, No. 8, March T., 1913, by Thomas M. Derr, from order of C. P. Cumberland Co., Nov. T., 1909, No. 12, for contempt in case of David L. Greason v. Cumberland Railway Company. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Affirmed.

Rule to show cause why Thomas M. Derr should not be punished for contempt of court. Before Sadler, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order adjudging the respondent guilty of contempt of court and fining him $25.00.

*E. M. Biddle, Jr.,* with him *F. B. Sellers, Jr.,* for appellant, cited: Com. v. Newton, 1 Grant (Pa.), 453; Crilly v. Hemm, 27 Pa. Superior Ct. 635; Aurentz v. Porter, 48 Pa. 335; Garis's App., 185 Pa. 497; Hummel's Case, 9 Watts, 416; Lerch's Contested Election, 21 Pa. Dist. Rep. 1113; In re Hirst & Ingersoll, 9 Phila. 216; Doan's Case, 5 Pa. Dist. Rep. 211; Dolan's Case, 6 Pa. Dist. Rep. 578; Com. v. Gibbons, 9 Pa. Superior Ct. 527.

*G. Wilson Swartz,* for appellee, cited: Com. v. Davis, 1 W. N. C. 18; State v. Cowan, 38 Tenn. 280; U. S. v. Reed, 2 Blatch. 435; Doan's Case, 5 Pa. Dist. Rep. 211.

Opinion by Orlady, J., October 13, 1913:

Thomas M. Derr was adjudged guilty of contempt of court and ordered to pay a fine of $25.00 for the use of Cumberland county. The facts of the case are sub-

stantially as follows: David L. Greason brought an action of trespass against the Cumberland Railway Company to recover damages suffered by him by reason of the construction and operation of a trolley road of the said company over his property in Cumberland county. A jury trial was had and resulted in a verdict in plaintiff's· favor, which was set aside and a new trial ordered. On November 20, 1911, a jury in the second case was impaneled, and by agreement of counsel the court directed the sheriff to take the jury upon the ground to view the premises in question, in order that they would more fully understand the facts as developed on the trial. Thomas M. Derr, this appellant, resides near the farm of David L. Greason, whose land was being taken by the trolley company. He had been a witness for his neighbor, Greason, on the first trial and expected to be called as a witness on the second trial. He evidenced considerable interest in the case, conferred with Greason in reference to it, and accompanied him when he subpoenaed his witnesses, consulted with counsel and in a general way assisted in the preparation of Greason's case against the trolley company.

One of the jurors, Solomon Shelton, and Derr had been intimate acquaintances for many years, and after the jury of view had inspected the premises they were permitted to return to their homes for the night. During the ride on the car to their homes, Derr engaged Shelton in conversation and manifested considerable ill feeling against a Mr. Pascoe, who was the superintendent or manager of the trolley company, with whom he had a controversy in regard to the location of a trolley pole which had been erected by the company and cut down by Derr, speaking of him as "Such a big liar, you can't believe anything he says." And when Shelton replied by saying that he didn't know Pascoe was that kind of a man, the statement was repeated and emphasized.

It must be conceded from the facts in the case that

Derr had a very pronounced ill feeling towards Pascoe; that he communicated this to Shelton; that his grievance against the trolley company was due to the alleged unfair treatment of Pascoe to him; that from his interest in the case of Greason against the trolley company his conversation with Shelton was intended to have the effect of prejudicing the juror against the defendant company, or at least against its general manager, who was in charge of the construction of the road and who had fixed the location of the line of which the plaintiff complains. Having served as sheriff of the county he was familiar with the care universally given to protect jurors from outside influence. With these admitted facts, was this such a case of contempt as to justify the court in finding him guilty and imposing the fine? The offense, if any, was not committed in the actual presence of the court, nor during the trial of the case in the court room. The jurors had been regularly impaneled and in the discharge of one of their duties they had been directed to view the premises, and between the adjournment and convening of the court this conversation occurred.

It has been universally recognized that the power to punish for contempt is inherent in the courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of judgments, orders, and writs of the court, and consequently, to the due administration of justice. It is a power inherent in all courts of record, and coexisting with them by the wise provisions of the common law: 7 Cyc., p. 30.

Any attempt, whether by a venal offer, or other influence to affect the mind of a juror who has been duly impaneled, is as much an interference with the administration of the law as any that could be suggested. It has been held that approaching a juror for the purpose of influencing his action is a contempt: In re Cuddy, 131 U. S. 280. Influencing a witness to absent himself has been held to be a contempt: Hale v. State, 55 Ohio, 210; Montgomery v. Palmer, 100 Mich. 436; 7 Cyc. 65;

17 Cyc. 1210.  If a juror has been exposed to improper influence which may have affected the verdict, the presumption is ordinarily against the purity of the verdict: 17 Cyc. 1212.

The place where the conversation occurred is not controlling.  The intention of the law being to preserve the juror's mind free from any contamination.  Ex-sheriff Derr, this appellant, the friend and advisor of Greason as well as the friend of Shelton the juror, could have had but one purpose in view in maligning or attacking the credibility of the superintendent of the defendant trolley company.  There would be no question of his wrongdoing if the conversation had been had while the appellant and the juror were seated in the presence of the court, or that it would have been a disregard of, and designed to foul, the administration of the law.

This proceeding was instituted at the instance of the defendant railway company, who were the special objects of the disfavor of the appellant, and when brought to the attention of the court a rule was granted to show cause why Derr should not be punished for contempt. A member of the bar was appointed by the court to hear the witnesses produced by either party and make a report of their testimony to the court.

The conduct of Derr could not be designated as anything else than a deliberate attempt to influence a juryman while in service, and in attendance upon the court, and as such must be regarded as a contempt for the orderly administration of the law, which cannot be tolerated under any subtle definition as to the place where it occurred.  Nor do we doubt the authority of the court to punish such an offense summarily.

As early as Blain v. Chambers, 1 S. & R. 169, it was held "That it is gross misbehavior for anyone to speak to a juryman or for a juryman to permit any person to converse with him respecting the cause he is trying at any time after he is summoned and before the verdict is delivered."  And under the Act of June 16, 1836,

P. L. 784, it is provided that among the powers of the several courts to issue attachments and to inflict summary punishments for contempts of court, the disobedience of parties, jurors, or witnesses are specially mentioned. The act provides as follows: "The punishment of imprisonment for contempt as aforesaid shall extend to such contempt as shall be committed in open court and all other contempts shall be punished by fine only." It is a fair construction of this act to hold that it provides for and authorizes the imposition of a fine for an indirect or constructive contempt, as distinguished from an actual one committed in the presence of the court, as one offered elsewhere than in the actual view of the court and during the progress of a trial, and which tends by its operation to degrade or make impotent the authority of the court, or in some manner to impede or embarrass the due administration of justice: 7 Am. & Eng. Ency. of Law, 28.

To constitute such a constructive contempt, some act must be done, not in the presence of the court, that tends to obstruct the administration of justice or bring the court, or judge or administration of justice into disrespect: In re Dill, 49 Am. Dec. 505. There may be misbehavior in the presence of the court amounting to contempt that would not ordinarily be said to obstruct the administration of justice, and so, there may be misbehavior not in the immediate presence of the court, but outside of the building in which the court is held, which on account of its disorderly conduct would actually interrupt the court, being in session in the conduct of its business, and consequently obstruct the administration of justice. As said by Mr. Justice HARLAN in Ex parte Savin, 131 U. S. 267, "We are of opinion that within the meaning of the statute, the court, at least when in session, is present in every part of the place set apart for its use and for the use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court." (See

also State v. Cowan, 38 Tenn. 280; United States v.
Reed, 2 Blatch. 435; Doan's Case, 5 Pa. D. R. 211; Ex
parte Cuddy, 131 U. S. 280; Ex parte Savin, 131 U. S. 267.)

This was declared to be the law in a case when the
party was charged with contempt, in improperly en-
deavoring to deter a witness from testifying while con-
versing with him in a hallway adjacent to the court
room.  And in State v. Doty, 90 Am. Dec. 671, s. c., 32
N. J. Law, 403, the question is squarely decided, where the
party charged with contempt was neither a party to
the suit, an officer of the court, nor a witness, the ar-
rangement being that a juror should give a signal to the
defendant in regard to the likelihood of the jury not
agreeing on a verdict, so that a bet could be arranged
and wagered on the result.  BEASLEY, C. J., saying:
"The law strictly forbids all intercourse of every de-
scription upon the subject of the cause of trial between
jurors and other persons.  To effect this end, the court
commits them in charge of its own sworn officers.  The
consequence must be, therefore, that any attempt to
invade this seclusion is illegal, and a palpable violation
of judicial authority.  The legal inhibition is against
all intercourse with the jury during their consultation,
and it is manifest that any sequestration short of this
would be entirely illusory, for it is certain that if the
door were thrown open, that no mode could be devised
so that only proper intelligence would be permitted to
pass.  I know of nothing which calls for keener vigilance
on the part of judges, than of everything which has a
tendency to expose jurors to the arts of friends or fol-
lowers of litigants.  It is every day's experience that the
course of justice is constantly thrust aside by this ob-
stacle."

It is not sufficient that such evil influence may be
overcome by the granting of a new trial.  The wrong
done by interfering with the proper administration of
the law, by poisoning the mind of a juror against the
cause on trial or against a witness necessary to sustain

it, is a crime against the whole system of law: Erwin v. Bulla, 29 Ind. 95; s. c., 92 Am. Dec. 341, and notes. For a juror to corruptly confer about the cause with a party to a cause on trial and the verdict to be rendered is a contempt: In re May, 1 Fed. Repr. 737.

The offense charged is one that affects the very foundations of our system of legal administration, and should be dealt with promptly and severely. The proceedings were regularly conducted and we affirm the judgment.