## Guarantee Trust and Safe Deposit Co. v. Heidenreich et al.

*Contempt of court—Jury—Tampering with jury—Talking with juryman.*

1. Where, after adjournment of court for the day, a woman interested in one of the parties in a suit on trial engages in conversation with a juryman in reference to the case, and with an apparent intent to influence him, and the juryman does not stop her or report the matter to the court, both he and the woman will be adjudged guilty of contempt of court.

2. Any attempt, whether by a venal offer or other influence to affect the mind of a juror who has been duly impaneled, is an interference with the administration of justice and a contempt of court.

Rule on Charles F. Rowley and Mrs. Mary Ann Tomat to show cause why they should not be respectively adjudged guilty of contempt of court and punished accordingly. C. P. Schuylkill Co., Jan. T., 1923, No. 284.

*John F. Whalen* and *R. P. Swank*, for rule.

*James J. Bell* and *V. J. Dalton*, for respondents.

Koch, J., March 24, 1924.—The above rule was issued by the court of its own motion because of disclosures made in the depositions of Charles F. Rowley, which, among others, were taken in support of the motion for a new trial in the above case, one of the reasons in support of said motion being the alleged misconduct of the respondents to this rule during the trial of the above stated case. At the time fixed for the hearing, Mrs. Tomat filed an answer to the rule, and both of the respondents testified respecting the matters stated in the order of the court when the rule was issued. Rowley was a juror in the trial of the above stated case, and Mrs. Tomat was in attendance at court as a witness, having been subpoenaed for that purpose, although she was not called to the witness-stand. The testimony taken on this rule discloses that, after the adjournment of the court on one of the days of the trial,

the two respondents walked and talked together from the court-house down to the corner of Centre and Norwegian Streets, in Pottsville, during an interval that must have been, in our judgment, at least from six to ten minutes, because the members of this court are perfectly familiar with the distance traveled during said conversation. Rowley knew that he should not talk to any one about the case (excepting perhaps his colleagues), nor allow others to talk to him about it, and that he should stop others if they undertook to talk to him about it. Each blames the other for introducing as a subject of conversation anything concerning the case then on trial. According to Rowley, Mrs. Tomat told him what a fine old gentleman William H. Heidenreich, deceased, the testator, was, when the sole object of the litigation then before the jury was the determination of the validity of Heidenreich's will. So far as Rowley is concerned, Mrs. Tomat seemed to be very indignant about the proceedings in court, and said that the testator had had some difficulty with one of the children. She told Rowley that she had known Heidenreich for a number of years; that she was very much interested in the case, and that she had been a servant to the old gentleman and that one of the children was ugly to him. He did not tell her that it was improper for her to talk to him, and he made no report of the matter to the court because he did not realize that he had made a mistake until the rule in this case was served upon him. He had inquired from one of the jurors who the woman was. Mrs. Tomat testified that Rowley said to her: "You are the woman that there are so many against you; you ought to be ashamed, a woman like you going after this man; it is a big shame," and she replied: "It is no shame. The man needed a woman and took me in the house. I do not know anything about it." Rowley replied to her: "You do not know you have so many witnesses against you in the court." She claims that Rowley spoke to her as though he knew her, and claims that he said to her: "Don't you know you was lying with this man on the couch." She claims that she tried to avoid him and that she stopped to fix her shoes, but that he went ahead and then waited until she came up to him. She denies that she told him that she was interested in the case, but admits that she said Heidenreich "was an awful nice gentleman." She had lived with Heidenreich nine or ten months, and disclaims any interest in the will contest. From her testimony, one would think that she had thought of marrying the old man. She claims that he had made a will bequeathing $2000 to her, but she never saw the will. Mrs. Tomat is a widow. She said that she did not know that Rowley was a juror, although she had been sitting in court for seven continuous days. She testified that her name is Mary Ann Tomat, but she signed her answer as Ann Tomat. She came from Germany and has been in this country about thirty years.

In the case of Blaine's Lessee v. Chambers, 1 S. & R. 169, Chief Justice Tilghman, inter alia, said: ". . . it would be an injury to the administration of justice not to declare that it is gross misbehavior for any person to speak to a juryman, or for a juryman to permit any person to converse with him respecting the cause he is trying, at any time after he is summoned and before the verdict is delivered." Mr. Justice Yeates, in his opinion, concurred in by Mr. Justice Brackenridge, in the case, said: "If the truth of the fact was correctly stated in those affidavits, the person who attempted to labour the jury merited the most severe punishment, as such conduct poisons the first sources of justice."

In Greason v. Cumberland Ry. Co., 54 Pa. Superior Ct. 595, in which one Derr engaged a Mr. Shelton, a juror, in conversation on a trolley car "and manifested considerable ill-feeling against a Mr. Pascoe, who was the super-

intendent or manager of the trolley company with whom he (Derr) had a controversy in regard to the location of a trolley pole which had been erected by the company and cut down by Derr, speaking of him as 'such a big liar, you can't believe anything he says,' " the Superior Court said:

"The offence, if any, was not committed in the actual presence of the court, nor during the trial of the case in the court-room," but occurred after court had adjourned. The court further said: "It has been universally recognized that the power to punish for contempt is inherent in the courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of judgments, orders and writs of the court, and, consequently, to the due administration of justice. It is a power inherent in all courts of record, and co-existing with them by the wise provisions of the common law: 7 Cyc., 30."

"Any attempt, whether by a venal offer or other influence, to affect the mind of a juror who has been duly impaneled is as much an interference with the administration of the law as any that could be suggested. It has been held that approaching a juror for the purpose of influencing his action is a contempt: In re Cuddy, 131 U. S. 280." Again: "The conduct of Derr could not be designated as anything else than a deliberate attempt to influence a juror while in service and in attendance upon the court, and as such must be regarded as a contempt for the orderly administration of the law, which cannot be tolerated under any subtle definition as to the place where it occurred. Nor do we doubt the authority of the court to punish such an offence summarily."

In view of the premises and of such clear declarations of the law concerning the same, we are obliged to take cognizance of the misconduct on the part of both respondents to this rule.

March 24, 1924, the rule is made absolute and Charles F. Rowley and Mrs. Mary Ann Tomat are adjudged guilty of contempt of court and are directed to appear in person before the court on Monday, March 31, 1924, at 10 o'clock A. M., to receive such sentence as the court may then deem it necessary to impose upon each of them.          From M. M. Burke, Shenandoah, Pa.