## Commonwealth v. Lipchus et al.

*J. J. Owens,* for Commonwealth; *C. J. Wing,* for defendants.

NEWCOMB, P. J., October 29, 1930.—In April the three boys above named, being each under the age of sixteen years, became wards of the juvenile court

of this county and still remain so under commitment—one to St. Michael's Industrial School in Wyoming County, and the others to the Philadelphia Protectory for Boys.

A few weeks later this respondent, Mrs. Francis Kuras, undertook some sort of agency to procure the release of the two from the protectory. Her efforts brought her into communication with Thomas Jackson, probation officer of the court, by whom her activities were reported to Judge Leach, who is in charge of the juvenile court cases. Waiving formal complaint and process, Mrs. Kuras responded to the district attorney's notice by appearing in person and by counsel to answer the charge of contempt of court, which went to hearing by and before the writer on June 21st, at the request of Judge Leach, for reasons personal to him, as will hereinafter appear.

The material facts are found to be the following:

Respondent, like the other witnesses, is a Lithuanian, though having been born in this country, she speaks English fluently.

Her home is on Lloyd Street, in the northwestern section of this city. The other witnesses live in that neighborhood.

The subject matter is respondent's dealings with Mrs. Lipchus and Mrs. Yikaitas, the mothers of the boys sent by Judge Leach to the protectory.

These two women cannot speak English, and in point of intelligence are by no means on a par with respondent.

Grieving over the fate of their sons, they sought her aid. By reason of her advantages, she has in recent years been active as a social and political worker among her people.

The two women made known to her their willingness to pay if she could get their boys out of the protectory. A bargain was made and a consideration agreed upon, each paying Mrs. Kuras something like $75.

The amount, however, was in part made up of certain sums which she told the two she would have to pay Judge Leach and the district attorney.

Later she told the women that these payment had been made.

At the close of the hearing it was thought to be a case for indictment and not for summary proceeding, and it was so noted of record. On further examination, that impression is believed to have been erroneous.

It is bad enough for this lady to turn her advantages to sinister profit by speculating on the credulity of her obscure and illiterate countrywomen. She may, however, coin into money the heartaches of these sorrowing mothers without fear of anything worse than an action for damages. But she cannot with the like impunity and in aid of such coinage befoul the integrity of the court or a judge thereof in and about the discharge of his official duties.

It is to be borne in mind that it is not a case of defamatory utterance reflecting upon the action of a judge after final disposition of a cause. For, as a matter of jurisdiction, it was still pending; as one of fact, the terms of her agency show it to have been so known to respondent. Once the custody of the court attaches, it continues, subject to modification, no matter by what hand it is actually exercised, until terminated by order of the same tribunal.

The facts make out a case of constructive contempt by an act done not in the presence of the court, but at a distance, which tends either to degrade or belittle the court or the administration of justice: 13 C. J. 5. To constitute such constructive contempt, some act must be done, not in the presence of the court, that tends to obstruct the administration of justice, or bring the court, or judge or administration of justice into disrespect: In re Dill, 49 Am. Dec. 505, cited with approval in Greason v. Cumberland Ry. Co., 54 Pa. Superior Ct. 595.

In this Commonwealth, the practical difference goes only to the punishment as regulated by the Act of June 16, 1836, P. L. 784, section 24. It is there provided that: "The punishment of imprisonment for contempt, as aforesaid, shall extend only to such contempts as shall be committed in open court, and all other contempts shall be punished by fine only."

"It is a fair construction of this act to hold that it provides for and authorizes the imposition of a fine for an indirect or constructive contempt, as distinguished from an actual one committed in the presence of the court, as one offered elsewhere than in the actual view of the court and during the progress of a trial, and which tends by its operation to degrade or make impotent the authority of the court, or in some manner to impede or embarrass the due administration of justice:" Greason v. Cumberland Ry. Co., supra.

It doesn't at this moment occur to us that there is any more effective way of degrading a court and bringing it into disrespect than by craftily filling the mind of the ignorant and credulous with the impression that this is a land where the courts serve as a market place and their judgments are nothing but commodities subject to traffic by bargain and sale.

That, in effect, was the act of respondent now in question.

She is, accordingly, adjudged guilty of contempt and punishable by fine. She is ordered to appear for sentence.

From William A. Wilcox, Scranton, Pa.