J-S21007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEYONNAH GLOVER | : | |
| | : | |
| Appellant | : | No. 1917 EDA 2024 |

Appeal from the Judgment of Sentence Entered July 2, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-MD-0000029-2024

BEFORE: KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JULY 24, 2025**

Keyonnah Glover appeals from the judgment of sentence entered after she was convicted of indirect criminal contempt under 42 Pa.C.S. § 4132(2). She challenges the sufficiency of the evidence to sustain her conviction. After careful review, we reverse.

The contempt charges against Glover arose from her contact with alternate jurors during the trial in ***Commonwealth v. Robert Smith*** on June 6, 2024. In that case, twelve jurors and two alternate jurors were seated. After the jury was charged and sent to deliberate, the trial court excused the two alternate jurors for the day but did not release them from jury service. Later, the prosecutor informed the trial court that Glover, who was apparently a family friend of the complainant in the ***Smith*** case, told him that she spoke

_____

[*] Retired Senior Judge assigned to the Superior Court.

with the two alternate jurors. The trial court brought Glover and the alternate jurors in for questioning.

Glover testified that when she was outside the courthouse, the jurors approached her and included her in their conversation. By contrast, Juror 14 testified that after he left the courthouse, someone told him and Juror 13 that the case was a retrial, that the recording played at trial was altered, and that the defendant was guilty. Juror 13 testified that "a woman outside" approached him and Juror 14, said she was a family friend of the complainant in the *Smith* case, and said the case was tried before.

The trial court charged Glover with contempt under section 4132(2) of the Judicial Code. The court held a contempt hearing on July 2, 2024.

At the hearing, the trial court incorporated the alternate jurors' testimony from June 6, 2024. The Commonwealth presented the testimony of the prosecutor from the *Smith* trial, who related that Glover told him that the alternate jurors conversed with her and said they were leaning towards a verdict of guilty. The trial prosecutor confirmed that the recording at trial was redacted and the case was a retrial. Glover presented a character stipulation for her law-abidingness, honesty, and peacefulness.

Glover argued, in part, that there was no evidence she was subject to a specific order at the time she talked with the jurors. The trial court noted its staggered release procedure: "when the jurors were excused for the day, [the trial court] said that the family members . . . were not allowed to leave the courtroom until the court officer came back in the courtroom. So they couldn't

have any contact with the jurors." N.T., 7/2/24, at 22–23. Furthermore, the trial court said it "told Jurors 13 and 14 they were excused for the day, but not excused from jury service, because if something happened with one of the jurors [who] were deliberating, that the Court would call them back." *Id.* at 23–24. The court observed that Glover was present for the entire trial, including the jury instruction on outside influence and the staggered dismissal.

The trial court found Glover guilty of indirect criminal contempt and sentenced her to complete 40 hours of community service and pay a $300.00 fine. Glover timely appealed. Glover and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Glover presents one issue for review:

Whether the evidence was insufficient to establish that Keyonnah Glover committed indirect criminal contempt where there was no evidence of the order which she was alleged to have violated, no evidence that Ms. Glover was ever the subject of any order at all, nor any evidence of any wrongful intent?

Glover's Brief at 3.

"A trial court's finding of contempt will not be disturbed absent an abuse of discretion." *Commonwealth v. Griffiths*, 15 A.3d 73, 76 (Pa. Super. 2010) (quoting *Commonwealth v. Baker*, 766 A.2d 328, 331 (Pa. 2001)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* at 76–77 (quoting *Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa. Super. 2003)).

- 3 -

In reviewing a conviction for contempt, we must determine "whether the facts support the trial court's decision." ***Commonwealth v. Williams***, 314 A.3d 910, 912 (Pa. Super. 2024) (quoting ***Commonwealth v. Haigh***, 874 A.2d 1174, 1177 (Pa. Super. 2005)). Indirect contempt, committed outside the presence of a court, requires "the usual proofs required to convict for any charge." ***Commonwealth v. Stevenson***, 283 A.3d 196, 205 (Pa. 2022) (quoting ***Crozer-Chester Med. Ctr. v. Moran***, 560 A.2d 133, 136 (Pa. 1989)).

The charge in this case was under subsection 4132(2) of the Judicial Code, which recognizes the courts' power to punish for "Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court." 42 Pa.C.S. § 4132(2).[1] The essence of this charge is violating an order of court, which requires proof of four elements:

> (1) The court's order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;
>
> (2) The contemnor must have had notice of the specific order or decree;
>
> (3) The act constituting the violation must have been volitional; and
>
> (4) The contemnor must have acted with wrongful intent.
>
> Further, unless the evidence establishes an intentional disobedience or an intentional neglect of the lawful process of the court, no contempt has been proven. Moreover, a conviction for criminal contempt requires proof beyond a reasonable doubt.

_____

[1] At the hearing, Glover argued she was not an officer, party, juror, or witness. As she does not maintain this argument on appeal, we do not address it.

*In re C.W.*, 960 A.2d 458, 467 (Pa. Super. 2008) (quoting **Commonwealth v. Kolansky**, 800 A.2d 937, 940 (Pa. Super. 2002)) (brackets omitted).

To review a finding of contempt for violating an order, "this Court must first examine the order itself." **McNelis v. Lear**, 889 A.2d 617, 619 (Pa. Super. 2005) (citing **Wood v. Geisenhemer–Shaulis**, 827 A.2d 1204, 1208 (Pa. Super. 2003)). "The order forming the basis for the contempt finding must be definite, clear, and specific, leaving no doubt or uncertainty regarding the prohibited conduct." **Id.** (citing **Lachat v. Hinchliffe**, 769 A.2d 481, 490 (Pa. Super. 2001)). Like a penal statute, the order must define its terms "with sufficient definiteness that ordinary people can understand what conduct is prohibited." **Commonwealth v. Baker**, 722 A.2d 718, 721 (Pa. Super. 1998) (*en banc*), *aff'd*, **Baker**, **supra** (citing **Commonwealth v. Hendrickson**, 684 A.2d 171 (Pa. Super. 1996)). Notably, if there is no order or decree directed to the contemnor, the evidence is insufficient to sustain a finding of contempt. **Fenstamaker v. Fenstamaker**, 487 A.2d 11, 14 (Pa. Super. 1985).

At Glover's contempt hearing on July 2, 2024, the Commonwealth did not introduce "the order itself" that Glover allegedly violated into evidence. Likewise, the trial court's orders were not documented in the notes of testimony from the questioning on June 6, 2024. Nor do they appear anywhere else in the certified record. Without the trial court's orders at the contempt hearing, the evidence cannot establish that Glover was subject to a definite order leaving no doubt that it prohibited her subsequent conduct. **See id.** Because the facts at the hearing did not support the trial court's decision,

the evidence is insufficient to sustain Glover's conviction, and the trial court abused its discretion in finding otherwise. **Williams**, 314 A.3d at 912.

Moreover, the two orders the trial court cited in its Rule 1925(a) opinion did not clearly prohibit Glover's conduct. First, the trial court recalled that it repeated the standard jury instruction on avoiding outside influence to the jurors, and Glover was in the courtroom every day to hear this instruction. By its own language, however, the eight-paragraph standard instruction applies only to jurors. Five paragraphs prohibit jurors from exposure to outside influence, two prohibit jurors from using electronic devices during trial or deliberations, and one directs the jurors to report any juror who violates the rules to the judge.[2] Because the standard instruction, addressed to the jury,

---

[2] The instruction provides, in full:

> 1. In order for the jury system to work as intended, jurors must be absolutely impartial. One important way of making sure you are impartial is for you to only base your decision on information presented in court. Therefore, our system of criminal law allows you to consider only the evidence, arguments, and legal instructions that are presented during the course of the trial. You must avoid anything that might result or appear to result in your being exposed to outside information or influence. Allowing outside information to affect your judgment is unfair and prejudicial to the parties and could lead to this case having to be retried. Therefore, you must not communicate with anyone else about the case or listen to others talk about the case until the trial is completely over and I discharge you.

> 2. By "communicate," I mean more than just not talking face-to-face with other people about the case. You are not to communicate with anyone about the case by cell phone, text message, or email, or by posting information about the case or

*(Footnote Continued Next Page)*

_____

what you are doing as a juror on any social media platform such as Facebook, Twitter, or other similar websites.

3. You cannot even discuss the case with members of your family, close friends, or court personnel until after your jury service is completed and I discharge you. You must not have any conversations, even casual conversations, with the defendant, counsel for either side, or any witnesses. And you are not permitted to discuss the case with other members of the jury until after I give you my final instructions and send you back to begin your deliberations.

4. Do not read, listen to, or watch anything about the case in newspapers or magazines, or on radio or television, or the internet.

5. Do not try to get information relevant to the case on your own. Do not make any investigation, do any research, visit the scene, or conduct any experiment. Do not conduct any internet search about the facts of the case, the participants, or the law regarding these matters.

6. You are specifically prohibited from using a computer, cell phone, or other electronic device with communication capabilities at any time during your attendance at trial or during jury deliberations. These devices can be used during a break or recess in the proceeding but may never be used to obtain any of the following types of information:

    a. Information about a party, witness, attorney, judge, or court official.

    b. News reports about the case.

    c. Information collected through juror research about the facts of the case.

    d. Information collected through juror research on any topic raised or in any testimony offered by any witness.

    e. Information collected through juror research on any topic that you or another juror might think would be helpful in deciding the case.

*(Footnote Continued Next Page)*

does not pertain to spectators, it would not be sufficient to prohibit the conduct of another person.

Second, the trial court reasoned that its "staggered release" instruction restricted Glover's conduct outside of the courthouse. After receiving evidence at the contempt hearing, the trial court stated:

> [Glover] said she had been here every day. That means every single day when the jurors were excused for the day, she was sitting in the courtroom, where the Court said that the family members -- that they were not allowed to leave the courtroom until the court officer came back in the courtroom. So they couldn't have any contact with the jurors. So if she was here every single day, she heard that every single day.

N.T., 7/2/24, at 22–23. If Glover was part of the "family members" to whom the staggered release order applied, it is clear that the order prohibited her from leaving the courtroom until the court officer came back into the courtroom. However, it is not clear from the record whether "So they couldn't

_____

7. You must understand that any prospective or selected juror who uses an electronic device for one of the reasons I have indicated, or who records or broadcasts any of the events occurring during this judicial proceeding, or who otherwise violates any specific instruction I have given you regarding the prohibited use of electronic devices during these court proceedings, may be found in contempt of court and be subject to fine, imprisonment or both. That juror may also be subject to whatever sanctions I deem appropriate including the confiscation of the electronic device improperly used in violation of these rules.

8. You should also report to me immediately any violation of these rules by anyone who is either a prospective or selected juror in this matter.

Pa. SSJI (Crim), § 2.08.

have any contact with the jurors" was part of the staggered release order or was the trial court's unstated purpose in giving the order. Because there was a lack of evidence that this order prohibited Glover from talking with the jurors after she had waited to exit the courtroom, it would not be sufficient to establish a basis for Glover's contempt.

We pause to observe that speaking with a juror about a case before a verdict has long been recognized as "gross misbehavior." ***Blaine's Lessee v. Chambers***, 1 Serg. & Rawle 169, 173 (Pa. 1814) (opinion of Tilghman, C.J.). To do so "poisons the first sources of justice." ***Id.*** at 174 (opinion of Yeates, J.). This Court thus affirmed an adjudication of contempt for a witness who told a juror that another witness was a liar. ***Greason v. Cumberland Ry. Co.***, 54 Pa. Super. 595, 601–02 (1913). We ruled that the location of the interaction—a car ride outside of court—was no obstacle to the trial court's authority to summarily punish the misconduct. ***Id.*** at 599.

Juror interference is no less of an issue now than in past centuries. This decision does not condone any attempt to discuss a case with jurors before a verdict. Rather, we reverse Glover's conviction for indirect criminal contempt because the evidence was insufficient to establish a required element under subsection 4132(2), that the trial court's order be specific as to the persons covered by the order and the conduct prohibited. We do not question the trial court's swift inquiry into potential outside influence on the alternate jurors.

Judgment of sentence vacated. Conviction reversed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/24/2025